Argued April 4, reversed and remanded with directions May 22, 1923.

## FRANKLIN v. NORTHRUP.

(215 Pac. 494.)

**Work and Labor—Promise to Pay Implied from Rendition of Services Except Where Intimate Relationship Exists.**

1. Where valuable services are rendered by one for another, the law implies a promise to pay whatever sum such services are reasonably worth, but this implication does not arise where the parties are related by blood or marriage, and are members of the same family and household, or where there existed between them a domestic relationship the incidents of which are essentially similar to those which are ordinarily associated with such relationship when it exists between kinsfolk.

**Executors and Administrators—Evidence of Services not Covered by Agreement Held to Raise an Implied Promise of Decedent to Pay.**

2. Where no family relationship existed between plaintiff and decedent, but by express agreement, promoted by their intimate friendship of long standing, they lived together as members of the same household, evidence of plaintiff's services of value in caring for decedent, beyond those contemplated by the agreement, was sufficient to raise an implied promise upon the part of decedent to pay the reasonable value of such services in the absence of a showing that plaintiff performed them without expectation of compensation, or that there was an understanding that they should be rendered gratuitously.

**Executors and Administrators—Evidence Held Sufficient to Sustain Finding That Services were not Gratuitously Rendered.**

3. In an action by plaintiff for valuable services performed for deceased, evidence *held* sufficient to sustain a finding that such services were not gratuitously rendered or rendered without expectation of compensation.

Executors and Administrators—Plaintiff Sufficiently Corroborated as to Her Claim for Compensation for Services to Decedent.

4. Under Section 1241, Or. L., providing that no claim rejected by an executor or administrator shall be allowed by any court on the uncorroborated testimony of the claimant, evidence of the facts and circumstances and acts and conduct of the parties *held* sufficient to constitute a corroboration of the testimony of plaintiff claiming compensation from the estate for valuable services rendered in caring for decedent prior to her death.

Executors and Administrators—Claim for Value of Services of One Uncorroborated Only as to Reasonable Value Warrants Recovery for Nominal Sum.

5. In an action for the value of services performed for decedent, where the only element of plaintiff's claim not corroborated by other testimony than her own is the reasonable value of such services, plaintiff is entitled to recover, though, under Section 1241, Or. L., requiring corroboration, her recovery would be limited to a nominal sum.

Executors and Administrators—Statute Requiring Corroboration of Rejected Claim Extends Only to Essential Elements.

6. The provisions of Section 1241, Or. L., providing that no claim rejected by an executor or administrator shall be allowed by any court on the uncorroborated testimony of the claimant, refer only to the material facts constituting the contract, express or implied, upon which the claim is founded, and do not extend to those collateral and incidental facts which do not touch the question of the right to recover.

Evidence—Opinion Evidence Admissible to Prove or Rebut Claim for Reasonable Value of Services to Decedent.

7. Though it is an elementary rule of public policy that evidence to establish a claim against the estate of a decedent should be clear, certain, and satisfactory, this rule does not render objectionable opinion evidence as to the value of services rendered by claimant to decedent, since in the very nature of such claim the only evidence available to corroborate or rebut plaintiff's testimony concerning the value of such services must consist of the opinions of persons qualified to testify as to their value.

Executors and Administrators—Testimony of Claimant as to Value of Services must be Corroborated.

8. In an action against an executor for services rendered to deceased, plaintiff must ordinarily produce competent testimony to corroborate her estimate of the value of services for which she seeks recovery.

Executors and Administrators—Executor Owes Duty to Court and to Estate to Produce Testimony Rebutting Excessive Claim for Services.

9. Where the value which a claimant places on services to decedent for which she seeks to recover from the estate appear to be excessive, the executor or administrator owes a duty both to the estate and to the court to produce evidence of the reasonable value

of such services by introducing in evidence the opinions of persons qualified to estimate such value and express credible opinions thereon.

**Evidence—Plaintiff's Testimony as to Value of Services Performed for Decedent Competent.**

10. In an action against an executor for value of services performed for decedent, plaintiff's testimony as to the value of such services is competent.

**Executors and Administrators — Biased Testimony of Plaintiff, Though not Entitled to Great Weight, Sufficient to Warrant Refusal to Nonsuit Her.**

11. In an action for the reasonable value of services performed by plaintiff for decedent, her testimony as to the value of services performed, though not entitled to great weight, in view of her evident design to absorb the entire estate rather than to measure the value of her services by the price usually paid for such services, yet was sufficient to justify denial of motion for a nonsuit.

**Executors and Administrators—Evidence of Expenditures in Behalf of Decedent Insufficient to Corroborate Plaintiff's Claim.**

12. In an action by plaintiff against an executor for alleged expenditures made by her in behalf of decedent in the purchase of provisions and necessaries used jointly by plaintiff and decedent, evidence that plaintiff ordered all the provisions and necessaries used and assumed and exercised the entire management of the apartment was insufficient to afford the corroboration of plaintiff's claim required by Section 1241, Or. L., and as to such claim a nonsuit should have been granted.

**Appeal and Error—Executors and Administrators—Executor Entitled to Specific Finding as to Whether Conveyance by Decedent to Plaintiff was a Gift or Payment for Plaintiff's Services and Expenditures; Refusal of Finding Prejudicial.**

13. In an action against an executor for services and expenditures in behalf of decedent, where the evidence as to a conveyance of certain property by decedent to plaintiff was such that it might have justified the court in finding that the conveyance was in payment of plaintiff's claim, an express, specific finding upon the issue whether the conveyance was a payment or a gift was required, and a finding that plaintiff was entitled to recover a designated sum, "no part of which has been paid," though a direct finding against defendant, was not sufficient to avoid the prejudicial error of the court's refusal to make a definite finding on defendant's request therefor.

**Appeal and Error—Finding That Decedent Induced Claimant to Perform Services by Misrepresenting Her Means not Prejudicial Error, Though Unsupported by Evidence.**

14. In an action for services and expenditures in behalf of decedent, where there was no evidence of family relationship between plaintiff and decedent, and in view of the finding of the court that plaintiff's services were not gratuitously rendered, there was no prejudicial error in a finding that decedent concealed from plaintiff her true financial condition and represented herself as possessed of

small means and as dependent upon plaintiff for her care and support, though such finding was without substantial evidence to support it.

**Executors and Administrators—Claim Against Estate for Services not Barred by Laches or Limitations.**

15. Plaintiff's claim against the estate of decedent for valuable services performed in caring for her during period of seven years prior to her death *held* not barred by laches or limitations.

From Multnomah: GEORGE TAZWELL, Judge.

Department 2.

REVERSED AND REMANDED.

For appellant there was a brief over the names of *Mr. Henry S. Gray, Mr. John F. Logan, Mr. Clarence H. Gilbert* and *Mr. John A. Laing,* with oral arguments by *Mr. Gray* and *Mr. Logan.*

For respondent there was a brief over the names of *Mr. Glenn E. Husted* and *Mr. Wilson T. Hume,* with an oral argument by *Mr. Husted.*

McCOURT, J.—Defendant is administrator of the estate of Louise Humphrey-Smith, deceased. Plaintiff presented a verified claim against the estate as follows:

For personal services performed for deceased between June 15, 1913 and February 5, 1920, alleged to consist of housework, care, nursing, attention and compensation, 59 months at $150 a month.................$ 8,850
and 12 months at $200 a month...........   2,400
For moneys expended for support of deceased during the same period.................   1,600

Total................$12,850

The administrator disallowed and rejected plaintiff's claim, whereupon she commenced this action to establish the same.

Defendant, in his answer, admitted that plaintiff rendered some services to the decedent of the character stated in plaintiff's claim and alleged in her complaint, but denied that plaintiff was entitled to compensation therefor. Defendant also denied the expenditure by plaintiff of any sums of money for the support of the decedent, except certain sums which defendant alleged had been wholly repaid to plaintiff.

As an affirmative defense, defendant alleged facts from which he deduced the conclusion that the deceased, Louise Humphreys-Smith, and plaintiff, during all the times mentioned in plaintiff's complaint, and for some years prior thereto, virtually stood in the relationship of parent and child; defendant further alleged that the services rendered by plaintiff and the money, if any, expended by her in behalf of the decedent, was performed and expended in discharge of an obligation on the part of plaintiff to take care of, support and administer to the wants and needs of deceased, and to her comfort, in return for financial assistance and support and for maintenance, loving care and affection which it was alleged deceased had theretofore spent and lavished upon plaintiff.

For a second affirmative defense, defendant alleged that about January, 1919, in recognition of the care and devotion of plaintiff toward herself, and with the purpose and intention of compensating plaintiff for all support and care and attention rendered, and to be rendered by plaintiff, to herself, the decedent conveyed to plaintiff an unencumbered piece of real property, of the value of $2,000, which was received and accepted by plaintiff.

Plaintiff, in her reply, denied that the relationship between herself and decedent was such as to repel the implication of a promise to pay for the services rendered by her to the decedent, admitted the conveyance to her by decedent of real property of the value of $2,000, but alleged affirmatively that such conveyance was intended ·by decedent as a gift to plaintiff.

A trial was had before the court, without a jury. The court made findings in conformity to the controverted material averments of plaintiff's complaint. It was declared in the findings so made that plaintiff was entitled to compensation for sixty-four months, the first fifty-two months thereof at the rate of $115 per month, or $5,980, and the last twelve months of the period at the rate of $125 par month, or $1,500. The court also found that plaintiff expended for the support of the decedent, the sum of $800, for which she was entitled to recover. Based upon those findings, judgment was given plaintiff for the sum of $8,280. Defendant prosecutes this appeal from that judgment.

At the close of plaintiff's testimony, defendant interposed a motion for nonsuit, on the ground, among others, that the evidence submitted by plaintiff was insufficient to establish the claim of plaintiff upon either of her causes of action.

Defendant excepted to the several findings of fact made by the court, and submitted special findings upon the material issues presented by his answer and plaintiff's reply. The court denied and overruled defendant's several motions and exceptions, and refused to make the findings which defendant requested. Defendant assigns error upon the adverse rulings mentioned.

The questions thus presented call for an examination of the evidence, a transcript of which is attached to, and made a part of, the bill of exceptions.

Plaintiff's mother died when plaintiff was an infant. Louise Humphrey-Smith, defendant's intestate, was a talented, kind and generous woman. Her husband died about the time of the death of plaintiff's mother. Mrs. Smith thereupon took a deep interest in plaintiff; during her childhood, plaintiff frequently visited at the home of the deceased, and also lived with decedent for some time, and during all of plaintiff's girlhood and younger womanhood, plaintiff received from deceased, the care, affection, counsel and protective guidance that a natural daughter usually receives from a mother. Plaintiff finished her education in Germany, to the expense of which the deceased contributed substantial sums of money. The solicitude of decedent for the welfare of plaintiff and the natural gratitude of plaintiff arising therefrom, created a strong mutual attachment and affection between them, which apparently continued until shortly before the death of Louise Humphrey-Smith, when she became mentally incompetent, as the result of progressive malignant physical affliction.

Prior to the fifteenth day of June, 1913, plaintiff was residing in the City of Portland, Oregon, and defendant's intestate, Louise Humphrey-Smith, was, and for several years had been, residing at Berkeley, California. The deceased was then about seventy years of age, and was in failing health. The condition of decedent's health was explained to plaintiff by mutual friends, and thereafter by correspondence between the plaintiff and decedent, it was mutually agreed that plaintiff would secure an apartment in Portland,

Oregon, and that plaintiff and decedent would thereafter live together and share the rental of the apartment and all other living expenses equally; that in pursuance of that agreement, and in anticipation of the coming to Portland of the deceased, plaintiff secured an apartment in the Kingsbury Apartments in the City of Portland, and on or about the fifteenth day of June, 1913, deceased came to Portland and took up her residence with plaintiff in the apartment mentioned, where plaintiff and deceased lived together until the death of Louise Humphrey-Smith on February 5, 1920. Plaintiff introduced the deceased to strangers as her aunt, and habitually addressed her as "Tante," meaning "Aunt" in the German language.

During all the times plaintiff and deceased lived together, plaintiff was employed as a teacher in the public schools of Portland, and devoted to that vocation the amount of time usually employed by teachers therein, receiving as compensation therefor, from $100 to $150 per month.

Shortly after decedent arrived in Portland and took up her residence with plaintiff, she was attacked by a serious illness, which confined her to her bed for several weeks. Plaintiff waited upon and nursed the decedent in that illness, and in August went to the beach for two weeks; in September the decedent went to a sanitarium for a month. When she returned from the sanitarium, a housekeeper was employed from thence on until about July 1, 1915. During the period following the illness mentioned, the health of the deceased was improved, and she was up and about, went down town and visited neighbors occasionally. Plaintiff, during all this period, except the summer vacations, left the apartment about 8 o'clock in the morning and returned between 3:30 and

4 o'clock in the afternoon. While at the apartment, she endeavored to administer to, and promote, the comfort of the deceased so far as was practicable. When the housekeeper was dismissed in July, 1915, plaintiff, in addition to looking after the comfort of the decedent, did the necessary housework in and about the apartment.

The decedent attended the Exposition in San Francisco, and visited friends there, between November 1, 1915 and July 1, 1916. Plaintiff had previously spent a month in visiting the Exposition. About the latter date decedent returned to Portland, and again took up her residence with plaintiff. In the meantime her health had become further impaired, and shortly after her return, she suffered from a severe illness that lasted several weeks; this was followed by intermittent spells of serious illness, which produced a rapidly progressive decline in her general physical condition, and rendered her nervous and irritable, and also had the effect of reducing her mental powers, finally destroying the same.

After she returned to San Francisco, decedent required considerable more attention than had been necessary during the first two years of her residence with plaintiff. Her attacks of illness generally came on at night in the form of convulsions, which disturbed the rest of plaintiff and taxed her strength in waiting upon decedent. On some of these occasions a trained nurse was employed for a few weeks at a time, but in the intervals the attention which the ill health of the deceased required, was given by plaintiff.

All of the nurses and housekeepers mentioned were paid by the decedent, and several witnesses testified to statements made by deceased to the effect that she

paid her share of all other expenses incurred in keeping up the apartment.

In the intervals between convulsive attacks and recuperation therefrom, the deceased, until about December 1, 1918, was able to be about, and frequently went down town, attended church and visited some of her acquaintances.

Plaintiff testified that decedent paid one half of the rent for the entire period which plaintiff and deceased lived together, but that deceased did not, during any of the time, pay any part of the cost of provisions and supplies and other expenses incident to the maintenance and upkeep of the apartment.

The financial resources of the decedent were not large. When she came to reside with plaintiff, deceased had some money (how much does not appear), that she had earned and saved from the pursuit of her vocation as a teacher of elocution and dramatic reading. She owned some real property, from which she derived no income, consisting of three city lots in Portland, Oregon, of the aggregate value of about $14,000, and one lot in Oakland, California, which latter lot she sold in 1918 for $425. Deceased received a pension of $25 a month. In 1915 she borrowed $3,000, and secured the same by a mortgage on part of the real property mentioned. Early in 1919, through the death of a brother, she became entitled to a legacy of $10,000, one half of which was paid to her. Plaintiff at all times had a general knowledge of the financial condition of decedent.

Judge Northrup, the defendant in the instant case, was the legal adviser of deceased. In January, 1919, after deceased had been advised of the legacy given her by her deceased brother, plaintiff complained to Judge Northrup that the decedent had not been con-

tributing her share of the household expenses of plaintiff and decedent, and declared that deceased, being then in possession of a substantial part of the legacy mentioned, ought to contribute toward those expenses.

The deceased was highly sensitive and inclined to be very independent. Judge Northrup, desiring to communicate to her the complaint of plaintiff without arousing her resentment, which had become quickened by the progress of her disease, indicated to the deceased that the attention and devotion of plaintiff merited some reward, and suggested that deceased convey to plaintiff one of her city lots, at the same time intimating that plaintiff might become dissatisfied and leave deceased. The deceased inquired whether plaintiff had expressed any intention of leaving her, to which Judge Northrup replied in the negative. Thereupon deceased declared that she would convey to plaintiff the lot in question, and directed Judge Northrup to prepare the necessary papers, and also instructed him to discharge any claims against the property and to pay the taxes thereon, which were not yet due.

Judge Northrup promptly prepared the necessary conveyance, which was executed and delivered by deceased to plaintiff about January 25, 1919. Plaintiff testified that deceased upon delivering the deed to her, said that it was a Christmas present. Shortly thereafter the decedent destroyed a will that she had previously executed. Deceased at the time of making the deed had just recovered from a severe attack of illness, during which she had required the services of a trained nurse for six weeks. Plaintiff continued to attend upon the deceased during evenings after school and at such times during the night that the de-

ceased required attention, until about July 1, 1919, when Judge Northrup was appointed guardian of the person and estate of the deceased.

After his appointment as guardian, Judge Northrup had a nurse in constant attendance upon the deceased and paid such nurse and all of the other expenses of the decedent from moneys in his hands as guardian.

The trial court made no allowance to plaintiff for the period of guardianship, although the claim of plaintiff extends over that period. Plaintiff, in her claim and in her testimony, asked $200 a month for services rendered to the deceased during that time.

The testimony of plaintiff respecting the character and extent of the services rendered by her to the deceased was corroborated by several witnesses. The only evidence as to the value of such services was the estimate of the same by plaintiff. She testified that she figured her services were worth $75 per month during the first year and a half, during which time a housekeeper was kept and paid for by Mrs. Smith; that when the housekeeper was not there, she thought her services were worth $125 a month. Later, testifying as to the value of her services in the absence of a housekeeper, the plaintiff said: "I should think about $100 a month, then."

Concerning her services from February 1, 1919 until July 1, 1919, plaintiff testified: "I have put down in my memorandum about $200." Her attorney then asked the question: "You think it would be worth that? A. Yes. She was very much worse that spring." From July 1, 1919, to the time of the death of decedent, witness said concerning the value of her services: "I would say $200 a month, because she was very much worse that fall."

The testimony of plaintiff in respect to the expenditure of moneys by her for the upkeep of the apartment, for one half of which she makes claim against the estate, was not corroborated by any other evidence, either as to the fact of payment or the amount of such payments. Plaintiff testified that she paid for all groceries, supplies and other items of expenditure incurred in conducting the apartment; that one half thereof was chargeable to the deceased; that the decedent failed to pay her part of such expenditures, with the exception of the rent which deceased paid. Plaintiff testified that she had destroyed all of her receipts and other evidences of the payments which she claimed to have made, and she estimated that the same amounted to $25 per month for the deceased, and $12 per month additional for such periods as a nurse or housekeeper was employed, for meals furnished the latter.

The testimony showed that the trained nurses employed by the decedent received $25 per week for nursing during twenty-one hours of the day, and that practical nurses so employed received from $40 to $50 per month.

Plaintiff made no demand or claim for compensation for services performed or money expended for Louise Humphrey-Smith, in the lifetime of the latter, except the complaint made by her to Judge Northrup, and in response to which the deceased conveyed to her the city lot above mentioned. Plaintiff testified that she had not thought of, or considered, making a claim for compensation, as she expected to be remembered in the will of deceased, and when she discovered that the decedent had not left a will, she determined to, and did, prepare and file her claim against the estate.

1. Defendant insists that the evidence, of which the foregoing is a summary, does not entitle plaintiff to a judgment. Defendant contends that the relationship between plaintiff and decedent and their mutual dependence upon each other was such that a promise of the deceased to pay for services rendered to her by plaintiff, will not be implied by law.

"The general rule is that, where valuable services are rendered by one for another, the law implies a promise to pay whatever sum the services are reasonably worth." *Sargent* v. *Foland,* 104 Or. 296 (207 Pac. 349).

But the implication of a promise to pay for such services does not arise where the parties are related by blood or marriage and are members of the same family and household, or where there existed between the parties a "domestic relationship the incidents of which were essentially similar to those which are ordinarily associated with such a relationship when it exists between kinsfolk." *Sargent* v. *Foland, supra;* 11 R. C. L. 209, 210, and cases cited in notes; *Hodge* v. *Hodge,* 47 Wash. 196 (91 Pac. 764, 11 L. R. A. (N. S.) 873), and extensive note thereto, from which the last above quotation is taken at page 877.

2. No family relationship existed between the plaintiff and decedent; they did not in a legal sense sustain to each other the ordinary relationship of members of the same family. An express agreement between them, promoted by an intimate friendship, instead of family ties and mutual dependence, brought and kept them together as members of the same household. Their continued residence together was pursuant to that agreement. Consequently, evidence of services of value, beyond those contemplated by the express agreement between plaintiff and decedent, per-

formed by plaintiff for deceased, and received and accepted by her, was sufficient to raise an implied promise upon the part of deceased to pay the reasonable value of such services.

Defendant next contends that the services rendered by the plaintiff to deceased were gratuitous, and that payment therefor was not contemplated by either of the parties during decedent's lifetime. Defendant bases this contention upon the evidence that plaintiff did not, during the lifetime of the deceased, claim or demand compensation for the services performed by her, and upon plaintiff's testimony that the presentation of a claim against the estate was an afterthought, produced by her disappointment at the failure of the decedent to make a will in plaintiff's favor.

The law presumes a promise to pay for valuable services rendered and accepted under the circumstances shown by the evidence in the instant case, unless it appears that the party who rendered the services did so without expectation of compensation, or that it was understood between the parties that the services should be rendered gratuitously: 28 R. C. L. 670, 672; *Ingram* v. *Basye,* 67 Or. 257, 260 (135 Pac. 883).

3. It was therefore a question of fact to be determined by the trial judge, whether or not the services were rendered gratuitously, and the court found in effect that they were not so rendered. As there was competent evidence to sustain that finding, the same cannot be disturbed upon appeal: *Turner* v. *Cyrus,* 91 Or. 462 (179 Pac. 279), and earlier Oregon cases therein cited.

Defendant contends that the testimony of plaintiff relating both to her claim for services and to her

claim for money expended for the support of the deceased, lacks the corroboration required by statute, and in support of that contention cites: Section 1241, Or. L.; *Goltra* v. *Penland,* 45 Or. 254 (77 Pac. 129); *Consor* v. *Andrews,* 61 Or. 483 (123 Pac. 46).

Section 1241, Or L., directs—

" * * that no claim which shall have been rejected by the executor or administrator * * shall be allowed by any court, referee, or jury, except upon some competent or satisfactory evidence other than the testimony of the claimant."

4. As to the facts and circumstances and the acts and conduct of the parties upon which plaintiff relies to raise an implied promise of the decedent to pay for services performed by plaintiff, the testimony was sufficiently corroborated to warrant a finding by the trial court of an implied contract between plaintiff and deceased, obligating the latter to pay plaintiff the reasonable worth of the services of value performed by plaintiff in behalf of the decedent.

5. The testimony of plaintiff as to the value of the services described in her claim was not corroborated, but in the absence of any evidence of the reasonable value of such services, laying aside the question of payment therefor, plaintiff was entitled to prevail in the action. In that event, however, her recovery necessarily would be limited to a nominal sum: *Gill* v. *New York Cab Co.,* 48 Hun, 524 (1 N. Y. Supp. 202); *Rowe* v. *City & Surburban Land Trust,* 43 R. I. 274 (111 Atl. 747); *Pierce* v. *Aiken* (Tex. Civ. App.), 146 S. W. 950; *Belfour* v. *Raney,* 8 Ark. 479.

6. The provision of the statute above quoted refers to proof of the material facts constituting the contract, express or implied, upon which the claim is founded, and necessary to be proved to enable the

claimant to recover at all. It is so held in the few jurisdictions having statutes of similar purport: *Tucker* v. *McMahan*, 11 Ont. 718; *Radford* v. *Mc-Donald*, 18 Ont. App. 167; *Union Land & Grazing Co.* v. *Arce*, 21 N. M. 115 (152 Pac. 1143).

The statute does not extend "to those collateral and incidental facts which * * do not touch the essential question of the right to recover": *Estate of Kaulbach*, 45 Nova Scotia Reports, 62, 67.

7. In the nature of the case, the only evidence available either to corroborate or to rebut the testimony of plaintiff concerning the value of the services rendered, consisted of the opinions of persons qualified to testify as to the value of such services. That evidence was as readily accessible to the defendant as to the plaintiff, and was equally as available to the defendant as it was to the decedent in her lifetime. Clearly, such opinion evidence is not within the mischief sought to be prevented by the statute. It is a rule of public policy that the evidence to establish a claim against the estate of a decedent should be clear, certain and satisfactory: 24 C. J. 866; *Scott* v. *Merrill*, 74 Or. 578 (146 Pac. 99); *Branch* v. *Lambert*, 103 Or. 423 (205 Pac. 995).

8. While there is no statutory or other requirement that the testimony of the claimant shall be corroborated as to the value of services performed under an implied contract, yet to meet the requirements of the rule mentioned, the plaintiff, in the great majority of cases must, and in all such cases should, produce testimony which tends to corroborate his, or her, estimate of the value of the services for which recovery is sought against an estate.

9. However, where the value which the testimony of plaintiff places on the services claimed to have been rendered, appears to be excessive, the defendant owes a duty to the estate which he represents and to the court, to produce evidence of the reasonable value of such services by introducing in evidence the opinions of persons qualified to estimate the value of such services and express credible opinions thereon.

10. The testimony of the plaintiff as to the value of her services performed in behalf of the decedent was competent: *Mercer* v. *Vose,* 67 N. Y. 56, 58; 22 C. J. 592.

11. The estimated value placed upon her services by plaintiff indicated a design to absorb the entire estate by her claim, rather than to measure the value of her services by the price usually paid for like services under similar circumstances, and upon that account, and in view of her interest in the result of the action, her testimony was not entitled to great weight; it did, however, furnish some competent evidence upon which the court was authorized to determine the value of the services for which compensation was sought, and consequently the court did not err in denying defendant's motion for a nonsuit in respect to plaintiff's first cause of action.

12. The claim of plaintiff contained in her second cause of action, relating to expenditures alleged to have been made for the support of the deceased, is not supported by any evidence except the testimony of plaintiff. It is true that several witnesses testified that plaintiff ordered all the provisions and necessaries used by plaintiff and decedent, and assumed and exercised the entire management of the apartment, but that evidence falls short of showing payment by plaintiff

for the provisions or necessaries mentioned, either from her own funds or those of decedent, and affords no evidence of the amount of any such payments.

Plaintiff's evidence did not meet the requirements of the statute, and the court should have granted defendant's motion for nonsuit as to plaintiff's second cause of action: *Harding* v. *Grim*, 25 Or. 506 (36 Pac. 634); *Goltra* v. *Penland*, 45 Or. 254 (77 Pac. 129); *Bull* v. *Payne*, 47 Or. 580 (84 Pac. 697); *Consor* v. *Andrews*, 61 Or. 483 (123 Pac. 46); *Branch* v. *Lambert*, 103 Or. 423 (205 Pac. 995); *In re Banzer's Estate*, 106 Or. 654 (213 Pac. 406).

The next contention of defendant is directed at the refusal of the trial court to find, as requested by defendant, that the conveyance by deceased to the plaintiff of the city lot, hereinbefore mentioned, constituted a payment of, or upon, plaintiff's claim. The allegation in defendant's answer that the conveyance was a payment was denied by the reply of plaintiff, and there was evidence upon which the court might have found in favor of defendant upon the material issue thus formed. Plaintiff, in her reply, alleged affirmatively, and also testified, that the conveyance was a gift.

13. Although expressly requested so to do, the court did not make a specific finding upon the issue mentioned. By finding that the plaintiff was entitled to recover a designated sum, "no part of which has been paid," the court indirectly found against defendant upon the issue under discussion, but that was not sufficient in the face of a demand made by defendant for a specific finding. The matter involved in the issue was material and important to the result of the case; it was the duty of the court, in response to

the definite and expressed request of defendant, to make a specific finding thereon, and its refusal so to do, constitutes prejudicial error: *Hicklin* v. *McClear,* 18 Or. 138 (32 Pac. 1057); *Noland* v. *Bull,* 24 Or. 479 (33 Pac. 983); *Moody* v. *Richards,* 29 Or. 282 (45 Pac. 777); *Harris* v. *Harsch,* 29 Or. 562, 569 (46 Pac. 141); *Jennings* v. *Frazier,* 46 Or. 470, 472 (80 Pac. 1011); *Freeman* v. *Trummer,* 50 Or. 287, 291 (91 Pac. 1077); *Naylor* v. *McColloch,* 54 Or. 305, 315 (103 Pac. 68); *Henderson* v. *Reynolds,* 57 Or. 186 (110 Pac. 979).

14. Defendant objected to the finding made by the court that the decedent concealed from plaintiff her true financial condition and represented that she possessed a small amount of means and was dependent upon plaintiff for her care and support, and that thereby plaintiff was induced to render services to the decedent and supply means for her support. There was no substantial evidence to support the finding referred to, and the court was in error in making the same. However, that finding was immaterial, and did not constitute prejudicial error, in view of the absence of family relationship, and the finding by the court that the services of plaintiff were not rendered gratuitously.

15. Plaintiff's claim is not barred by laches or by the statute of limitations, as contended by defendant: *Jamieson* v. *Potts,* 55 Or. 292 (105 Pac. 93, 25 L. R. A. (N. S.) 24); *Branch* v. *Lambert,* 103 Or. 423 (205 Pac. 995).

For the errors pointed out, the judgment of the Circuit Court is reversed and the cause remanded to the Circuit Court, with directions to enter a judgment of nonsuit against the plaintiff upon her second cause of action, and for such other and further proceedings

not inconsistent with this opinion, as may be deemed proper.

REVERSED AND REMANDED WITH DIRECTIONS.

McBRIDE, C. J., and BEAN and BROWN, JJ., concur.