Argued February 15, reversed March 20, 1928.

## RUBY BRENNEN *v.* F. N. DERBY, ADMINISTRATOR, ET AL.

(265 Pac. 425.)

**Specific Performance—Each Case Seeking Specific Performance of Decedent's Oral Contract to Devise or Convey must be Determined on Its Own Facts.**

1. Each case seeking specific performance of an oral contract of a decedent ·to devise or convey his property must be determined on its own peculiar facts.

**Specific Performance—Before Specific Performance can be Decreed Plaintiff must Allege and Prove Binding, Definite, Just, Reasonable and Mutual Contract.**

2. Before a court may exercise its discretionary power to decree ·specific performance of a contract, complaint must contain proper allegations of fact supported by proof of existence of a binding contract that is certain, definite, just, reasonable and mutual in its obligations in all its parts.

**Frauds, Statute of—Acts of Partial Performance, to Take Case Out of Statute, must be Exclusively Referable to Oral Contract (Or. L., § 808).**

3. Acts relied on as part performance, to remove a case from protection of the statute of frauds (Or. L., § 808), must be exclusively referable to the oral contract.

**Wills—Competent Person may Obligate Himself to Devise Property in a Particular Way or to a Particular Person.**

4. A competent person may obligate himself to make his will in a particular way or to give specified property to a particular person, so as to bind his estate.

**Specific Performance—Plaintiff Held not Entitled to Specific Performance of Decedent's Oral Contract to Devise in Consideration of Plaintiff's Remaining With Him Until His Death, Remedy at Law Being Adequate.**

5. Plaintiff *held* not entitled to specific performance of decedent's oral contract to devise his real and personal property to plaintiff

---

1. See 25 R. C. L. 214.

2. Specific performance, see notes in 128 Am. St. Rep. 383; 140 Am. St. Rep. 56. See, also, 25 R. C. L. 202.

3. Acts which may constitute part performance, see note in 53 Am. Dec. 539. See, also, 25 R. C. L. 260.

4. See 28 R. C. L. 64.

5. Contract to make will as enforceable, see notes in Ann. Cas. 1914A, 399; Ann. Cas. 1918A, 1191. See, also, 25 R. C. L. 306; 28 R. C. L. 64. Validity of oral agreement to devise land, see notes in 5 Ann. Cas. 495; 20 Ann. Cas. 1137; Ann. Cas. 1915A, 463.

in consideration of plaintiff's remaining with him until his death as his companion and her companionship and assistance as a dutiful child; her remedy at law to recover compensation for services performed prior to decedent's death being adequate.

**Limitation of Actions—Limitations Does not Begin to Run Against Cause of Action on Contract to Devise Until Services to be Performed have Been Fully Performed.**

6. Statute of limitations does not begin to run against cause of action on decedents' oral contract to devise property in consideration of services until the services have been fully performed.

**Frauds, Statute of—Performance of Services as Housekeeper Held not Such Services as to Take Oral Contract to Devise Out of Statute (Or. L., § 808).**

7. Service consisting of general housework and caring for decedent's house performed by plaintiff under decedent's oral contract to devise his property to her *held* not such services as take the case from protection of statute of frauds (Or. L., § 808), so as to entitle plaintiff to specific performance of the contract.

---

Frauds, Statute of, 27 **C. J.**, p. 208, n. 82, p. 209, n. 88.
Limitations of Actions, 37 **C. J.**, p. 821, n. 14, p. 852, n. 54.
Specific Performance, 36 **Cyc.**, p. 646, n. 13, p. 672, n. 33, p. 737, n. 54.
Wills, 40 **Cyc.**, p. 1063, n. 54.

From Marion: L. H. McMAHAN, Judge.

Department 2.

This is an appeal from a decree in favor of the plaintiff and against the defendant administrator and the heirs at law of T. W. Steiger, deceased. The suit is founded upon an alleged oral promise made by T. W. Steiger, now deceased, to devise his real and personal property valued at about $23,000 to the plaintiff, for the consideration named in the complaint. The complaint avers, in part:

"That, on or about the —— day of October, 1918, while plaintiff herein was so residing with the said T. W. Steiger, now deceased, plaintiff's father came to the home of said * * Steiger * * and expressed a desire at said time to the effect that it was for the

---

6. Specific performance of contract to leave property in consideration of services, see note in 44 **L. R. A. (N. S.)** 733.

best interest of plaintiff herein that plaintiff leave the home of the said * * Steiger * * and reside with her said father, at which time, in realization of the companionship of and affection for the plaintiff herein, the decedent herein undertook, promised, covenanted and agreed that he would make, execute, publish and declare a valid last will and testament, wherein and whereby he would devise and bequeath to the plaintiff herein any and all real and personal property which he might own at the time of his death * * and that plaintiff at the death of said decedent, by the terms of said will, could become the absolute owner of all of said real and personal property and effects. * *

"That the last will and testament was to be executed by said decedent in consideration that said plaintiff would remain with him during the remainder of the life of decedent, being the companion of decedent during the remainder of his life, and to be considered and accepted as a member of the family and child of the decedent, and render unto the decedent companionship and help and association as a dutiful child. * *

"That said understanding, contract and agreement above mentioned was acquiesced in by the plaintiff. And for the consideration above named plaintiff agreed to remain at the home of said decedent and did remain at the home of said decedent, rendering companionship to and assistance to said decedent during the remainder of decedent's life; * * and plaintiff fully kept and performed each and every provision of said contract to be kept or performed by her."

The plaintiff prayed for a decree declaring her to be the owner in fee simple of the real property described in her complaint, and the absolute owner of the personal property described therein. The defendants by their answer denied the allegations of

the complaint above set forth.   On trial plaintiff had verdict, and the defendant heirs appeal.

REVERSED.

For appellants there was a brief and oral argument by *Mr. Guy O. Smith.*

For respondent there was a brief and oral argument by *Mr. Donald W. Miles.*

BROWN, J.—In support of her complaint, plaintiff testified that she was twenty-one years of age and had resided in the Steiger family since her infancy. Concerning the contract, she testified:

"In the fall of 1918, my father came down from Raymond, Washington, to take me away from the home of the Steigers because Mr. and Mrs. Steiger were having domestic trouble and he thought it best for me to live with him, and Uncle Steiger felt very badly about me leaving and discussed the matter with my father and myself; and we discussed the matter a great deal that day, and it was understood and agreed—

"Mr. Smith: Just state what was said, not what was understood. * *

"A. At that time it was understood and agreed that I was to have his property if I would remain there at his home.

"Q. Did you remain there at his home after that? A. Yes.

"Q. And what were your duties?   A. Oh, general housework, caring for the house."

She then testified that Steiger died in the fall of 1925, and that she made a search for a will but could find none.   Continuing, she testified:

"Q. (On cross-examination.)   Now, when did Mr. Steiger first discuss with you giving you any of his

property? A. When my father came down to take me away. * *

"Q. Now, just what did he say to you at that time? A. I do not remember. I will not say just what he did say, because I don't remember. The substance of the conversation was, if I was to stay and remain in his household like I had been doing, that I would have his property when he died.

"Q. Don't you remember anything else that was said only what you have related now? A. No, that was several years ago. * *

"Q. You at that time were something like— A. Twelve years old.

"Q. Twelve or thirteen years old? A. Yes. * *

"Q. Don't you remember what was said by your father, how he happened to leave you with Mr. Steiger after he had come down there after you? A. I know my father said he would leave me there, but I don't remember what my father said.

"Q. Did he say how you were going to get the property? A. No."

J. S. Brennen, plaintiff's father, now a resident of Lake County, California, deposed as follows:

"Mr. Steiger said when I went to take Ruby away, 'Jim, I did not think you would take Ruby away from me,' and I said, 'Uncle, I don't intend to take her away for good, and when this trouble is over I intend to send her back.' Steiger said, 'Jim, I am glad you told me that, because Ruby is all that I have got in this world, and when I leave it everything I have is hers.' "

He fixed the date of this conversation as November 10, 1918. He further deposed:

"Some time in the summer of 1922, Mr. Steiger told me that he had his property all fixed, and that everything went to Ruby with the exception of $2,500 to Coney's daughter and about $200 to an old friend."

Plaintiff's mother, now Mrs. Mabel I. Bevins of California, deposed:

"The Steigers were great friends of mine, and I let Ruby go to stay with them first for a few days I think in 1909. Several times after that she stayed with them for a short while. In fact, she stayed with them more than she did at home. When I went to Walla Walla, Washington, about 18 years ago, they came and got her, and Ruby has made her home with them ever since. Mr. Steiger never asked my consent to adopt Ruby, but Mrs. Steiger did, and the reason she was never adopted was because I did not give my consent. * * He said everything went to Ruby when he was through with it."

To a number of the neighbors and intimate acquaintances, Mr. Steiger expressed his intention to devise a portion of his property to the plaintiff. To others he said he had made provision for her. To still others he said "Ruby" (plaintiff) "was to have it all." And yet to another near neighbor and close friend, while talking over the disposition to be made of his property, Steiger said that he intended "to take a trip back East to see how his nephews and nieces were situated," and further stated that he "did not believe in giving one too much, but believed in giving it (his property) to a good many."

1–3. In our own jurisdiction, and in others as well, the principles of law that govern the decreeing of the specific performance of an oral contract made in the lifetime of a decedent to devise or convey his property have been declared over and over again. That each case of this character must be determined upon its own peculiar set of facts is a principle both apt and familiar. Before a court may exercise its discretionary power to decree specific performance of a contract, not only must the complaint come before it with proper allegations of fact, but such allegations

must be supported by proof of the existence of a binding contract that is certain, definite, just, reasonable and mutual in its obligations in all its parts. Moreover, the acts relied upon to remove the cause from the protection of the statute of frauds must be . exclusively referable to the contract. Section 808, Or. L., our statute referred to, requires that some note or memorandum of the contract "expressing the consideration be in writing and subscribed by the party to be charged, or by his lawfully authorized agent."

We have already stated that the alleged contract upon which this suit is founded is oral. There is not a written word of record that tends to comply with the requirements of the statute above noted. At the time the contract was alleged to have been made, the only persons present besides the promisor were the plaintiff's father, and the plaintiff, then a child of twelve or thirteen years of age. As we have shown, the plaintiff was originally left by her parents with the Steigers, a childless couple, when she was less than five years of age. They wished to adopt the child as their own, but her mother objected. However, the mother testified, in effect, that, in consideration of their promise to bring the little girl up as their own daughter, and to make her the beneficiary of their estate, she permitted her to live with the Steigers and to make her home with them.

But this suit is not founded upon any contract made with the parents at that time. During the succeeding years, and until she had arrived at about the age of thirteen years, the plaintiff continued to abide in the Steiger home as her home. In the autumn of 1918 domestic discord arose between Mr. and Mrs. Steiger, and terminated four years later when Steiger divorced his faithless wife. It was not until

October, 1918, that the contract forming the subject matter of this suit is alleged to have been made.

4. That a competent person may obligate himself to make his will in a particular way, or to give specified property to a particular person, so as to bind his estate, is not questioned: *Stellmacher* v. *Bruder,* 89 Minn. 507 (95 N. W. 324, 99 Am. St. Rep. 609); *Mathews* v. *Tobias,* 101 Or. 605 (201 Pac. 199). In the former case the Supreme Court of Minnesota, discussing the remedy to be pursued in a cause of this character, said:

"If the contract be an oral one to devise land, and is reasonably certain as to its subject-matter and its stipulations, equity will decree specific performance, if there has been a part performance of such a character as will take a parol agreement to convey land out of the statute of frauds upon principles which courts of equity recognize and act upon. If the consideration for the contract be labor and services which may be estimated and their value liquidated in money, so as reasonably to make the promise whole, specific performance will not be decreed."

In a suit for the specific performance of a contract for services rendered by an attorney pursuant to an oral agreement by his client to convey land to him in payment for such services, specific performance will be denied for the reason that the attorney could have been completely reimbursed for his services by an action at law on *quantum meruit.* See *Farrin* v. *Matthews,* 62 Or. 517 (124 Pac. 675, 41 L. R. A. (N. S.) 184).

In *Roadman* v. *Harding,* 63 Or. 122 (126 Pac. 993), this court again, speaking through Mr. Justice BURNETT, held that a person performing services for another under an oral agreement to convey land in payment for the performance of such services cannot

have specific performance of the agreement where he has a plain, adequate and complete remedy at law to recover the value of his services.

The leading case of *Cooper* v. *Colson,* 66 N. J. Eq. 328 (58 Atl. 337, 105 Am. St. Rep. 660), is squarely in point. In that case the plaintiff alleged that Joseph P. Colson promised that if she would continue to live with him and act as his housekeeper, serve him and look after his interests as she had done, he would compensate her fully and completely; that he would leave her a farm; that he would make and execute his last will and testament and would therein in due form of law devise the farm to her. In denying her the relief prayed for, the court said, in part:

"If equity is to overthrow the statute (statute of frauds) on the ground that, owing to the peculiar character of the facts in a given case, it would be a fraud not to hold one of the contracting parties estopped from setting up the statute, such power should be exercised upon the most clear proof, not only of the contract to devise or convey the land in question, but of the fact that the rendition of the services was wholly referable to the contract to convey, and solely predicated upon that agreement, and that proper and adequate compensation for the services cannot otherwise be made, because of the fact that in reliance upon the contract it appears reasonably probable that the complainant has irretrievably changed the whole course of his life and circumstances in order to fulfill his part of the agreement."

To similar effect, see Pomeroy's Specific Performance of Contract, § 114.

5–7. Under the doctrine announced by the case of *Cooper* v. *Colson, supra,* this plaintiff has a complete remedy at law, and may recover full compensation for all services performed prior to August 18, 1925, the date of the death of T. W. Steiger, when her ser-

vices automatically ceased.   We will observe that the statute of limitations in such cases does not begin to run until the services have been fully performed. According to the plaintiff's own testimony, the services that were performed by her were not such services as will remove the cause from the protection of the statute of frauds.   See the many cases referred to in Pomeroy's Specific Performance of Contract, § 114, notes.   We repeat her testimony to the effect that the services she rendered in consideration of the making of the contract were "general housework, caring for the house."   It may be, as alleged in her pleading, that she performed services that cannot be calculated by a pecuniary measure.   But she has testified to a fact that forecloses any finding by this court as to the consideration rendered for the alleged oral promise made by the promisor.

We are compelled to reverse this case.   It is so ordered.                                        REVERSED.

RAND, C. J., and BEAN and BELT, JJ., concur.