Argued January 7; affirmed January 27; rehearing denied
March 3, 1931

# RICHTER *v.* DERBY
## (295 P. 457)

*Guy O. Smith,* of Salem, for appellant.

*W. C. Winslow,* of Salem, for respondent.

CAMPBELL, J. This is an action at law to recover the reasonable value of services rendered. The complaint, omitting the formal parts and the allegations admitted, alleges that between October, 1918, and the 17th day of October, 1925, plaintiff performed labor

and services for T. W. Steiger, now deceased, in household work, cooking, and showing the said T. W. Steiger attention, devotion, companionship and affection; and that T. W. Steiger promised and agreed to compensate plaintiff for the same; that the reasonable value of such labor and service was and is the sum of $23,000. She prays for judgment in the full amount of the claim.

The alleged contract and services are denied by the defendant's answer, and for a further and separate defense, he alleges that plaintiff was left with the family of deceased when she was a child of three years of age, and she lived in said family as a member thereof until the death of T. W. Steiger, which occurred October 18, 1925, being treated during all this time as such a member, performed such labor as a member of similar years and experience would naturally be expected to do, and was boarded, clothed and schooled as full compensation therefor.

Plaintiff's reply denies all the allegations of the answer except as alleged in the complaint.

It is admitted in the pleadings that the defendant is the administrator of the estate of T. W. Steiger, deceased; that plaintiff seasonably presented her claim to the administrator, and that he rejected it; and that this action was seasonably commenced.

On these issues a trial to a jury was had. The jury returned a verdict in favor of the plaintiff for the full amount claimed, and judgment was duly entered thereon. From this judgment the defendant has taken this appeal.

At the close of the testimony on the part of plaintiff, the defendant moved the court for an order of nonsuit on the grounds (1) that there is no evidence supporting, or tending to support, the allegations of plaintiff's amended complaint; (2) that there is no

evidence corroborating plaintiff's testimony as to an express contract as alleged in plaintiff's amended complaint; (3) that there is no evidence tending to establish the value of the services alleged to have been performed; (4) that there is no corroborating evidence of the value of the services.

The motion was overruled and exception taken. The defendant thereupon moved for a continuance, and filed the affidavit of his counsel that he was unable to obtain a material witness, and stated further in his affidavit the testimony that he expected to obtain from this witness. Counsel for plaintiff, thereupon, stipulated that if said witness was produced in court, he would testify as alleged in the affidavit of defendant's counsel. The court thereupon refused the continuance, and to this order an exception was taken. The defendant thereupon introduced his testimony and rested, whereupon plaintiff put on his rebuttal testimony. At the close of all the testimony, defendant failed to renew his motion for a nonsuit, or to move for a directed verdict.

There were several exceptions taken during the trial to the ruling of the court on admitting, and refusing to admit, certain testimony, but these exceptions have been abandoned in the brief, and oral argument of the counsel, and the court will pay no further attention to them; passing also whether defendant waived his rights to a nonsuit by failing to move for a directed verdict at the close of the testimony.

Plaintiff, whose maiden name was Ruby Brennan, was living at the home of T. W. Steiger and his wife, a childless couple, for about ten years prior to entering into the alleged contract set up in her complaint. The evidence shows that about 1918 or prior thereto, domestic trouble arose between Mr. and Mrs. Steiger, and at

this time, Ruby's father becoming apprised thereof, came to take her away. This was in October, 1918, and the time she claims the contract was entered into. The domestic trouble between the Steigers culminated in 1920 in an attempt to murder Mr. Steiger, for which his wife and a co-conspirator were convicted. This conviction was followed by a divorce in favor of Mr. Steiger. Ruby was in no way connected with these domestic difficulties.

■■ The real contention resolves itself down to the proposition: Did the court commit error in overruling the motion for a nonsuit?

Is there any evidence supporting or tending to support the allegation of the express contract as alleged in the complaint? There is the evidence of plaintiff. Her testimony is found on page 3 of the transcript of testimony, reduced to narrative form, as follows:

"Well, the most I recall about it was that Uncle Steiger felt badly because I was leaving, and of course, I felt badly because I was leaving, and I felt badly because he felt bad, and he said to my father, 'I didn't think you would ever come and take Ruby away from me; she's all I've got,' and he talked a good deal that he did not believe that my father would ever come and take me. Finally he said to the effect that if I would stay there, stay with him, and the substance of the conversation was if I would stay there with him that he would give me his property when he died. I don't really know whether he said definitely as long as he lived, but he said stay there with him; and based upon his statement to that effect, my father agreed that I should stay."

This is evidence of a complete contract, an agreement to perform labor on the part of the plaintiff, and a promise to pay on the part of defendant's deceased.

But in this case her testimony by itself is insufficient upon which to base a recovery, and must have been corroborated by other testimony.

Oregon Code 1930, § 11-504, provides, among other things:

"No claim which shall have been rejected by the executor or administrator, as aforesaid, shall be allowed by any court, referee or jury, except upon some competent satisfactory evidence other than the testimoney of the claimant:" *Franklin v. Northrup,* 107 Or. 537 (215 P. 494).

The deposition of J. S. Brennan, plaintiff's father, was received in evidence under stipulation between the parties. This is a deposition that was taken in the suit in equity, involving much the same controversy (124 Or. 574, 265 P. 425). In answer to the question:

"Q. If you recall coming to the Steiger place at one time when Mr. and Mrs. Steiger were having trouble, for the purpose of taking Ruby away, please state the substance of your conversation with Mr. Steiger at that time?

"A. Mr. Steiger said when I wanted to take Ruby away, 'Jim, I did not think you would take Ruby away from me.' And I said, "Uncle, I don't intend to take her away for good, and when this trouble is over, I intend to send her back." Steiger said, 'Jim, I'm glad you told me that because Ruby is all that I've got in this world, and when I leave it, everything I have is hers.'

"Q. What, if anything, did Mr. Steiger ever say to you regarding the disposition of his property at his death and please state approximate times and places that the conversations occurred.

"A. At Mr. Steiger's home, November 10, 1918, he said that Ruby was all he had and that when he died she would get everything."

Again on cross-examination he was asked the question:

"Q. Would you have insisted upon Ruby Brennan, your daughter, coming with you if you knew that she was not to receive the estate of Mr. Steiger, deceased, upon his death?

"A. Yes."

The purport of this testimony is that Ruby should be eventually paid for her services. Then there is the testimony of a great many wholly disinterested witnesses where T. W. Steiger made statements that Ruby was to be well paid for her services. Take for instance, the testimony of the late Senator Lloyd T. Reynolds, a man well known to many people in Marion county and throughout the state, for his sterling character and uprightness. His testimony on page 52 of the transcript of evidence:

"Q. Did you ever discuss it with him other than that one time after the conviction?

"A. Just once after that. I went down to his house early one morning, and he invited me in there. He was eating his breakfast. He was alone, and asked me if I had had breakfast, and I said I had, and he said, 'I was a little late this morning. Ruby had to go on and leave me,' and he was eating breakfast, and he said, 'Ruby has to work pretty hard, but she will be well paid some day.' That was the only thing he mentioned at that time."

The meaning of this testimony certainly is that it was the intention and purpose of Mr. Steiger to pay for these services, and to pay well. In addition to this, there is the testimony of Paul Marnach, J. J. McDonald, Seth U. Smith, and many others all to the same purport. All of them showing that Mr. Steiger was rather boastful of how hard Ruby was working, and how good she was to him, and how he intended to com-

pensate her. This feeling towards her appears to have continued to the day of his death. Generally the compensation mentioned was all of his property at his death.

Section III, article VII, Oregon Constitution, has been passed upon so many times by this court that citations are unnecessary.

"And no fact tried by a jury shall be otherwise reexamined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict."

This court, in an action of law cannot evaluate the testimony, or say what weight it shall be given, as that is a matter exclusively within the province of the jury. The testimony shows that this plaintiff discharged duties and performed services for this lonely old man, such as an exceptionally kind and dutiful daughter might have, as well as ministering to his wants as an affectionate and thoughtful mother might have done. This she did, single-handed and alone. His wife had grossly betrayed him, and in 1920 ceased to live with him. His blood relatives seemed totally indifferent. This grief-stricken, childless old man many times said to his neighbors and friends, referring to the plaintiff, "She is all I have to depend on. She will take care of me when I am old. She will get all I have when I go."

Who was in a position to know the reasonable value of the services better than the one to whom they were given? The testimony of the witnesses as to value ranged all the way from $30 per month, to all that he might leave. The defendant suggested on cross-examination that deceased left an estate valued at $23,000 (T. of T., p. 83).

There was abundant corroborating testimony of an express contract. There is evidence of the value of the

services, and although not necessary, it is also corroborated. This is sufficient to support the verdict. This court may not retry these issues. There were no exceptions taken to the instructions of the court, and indeed none could have been, as they were clear, concise, and covered every issue in controversy.

Under Oregon Code 1930, § 2-1003, a nonsuit cannot be granted unless there is no evidence to support the verdict: *Woods v. Wikstrom,* 67 Or. 581 (135 P. 192); *Taggart v. Hunter,* 78 Or. 139 (150 P. 738, 152 P. 871, Ann. Cas. 1918A, 128).

■ There is some contention made in the brief that verdict is excessive but that it is a matter that was never submitted to the trial judge. This is only a court of review: *State v. Jennings,* 131 Or. 455 (282 P. 560); *State v. Hay,* 132 Or. 223 (285 P. 753).

■ It is contended by appellant that the contract attempted to be proved is within the statute of frauds, and that evidence thereof was not admissible because the contract was not in writing. The rule stated in 27 C. J., p. 363 is:

"One who has performed labor and services under a contract which cannot be enforced because within the statute of frauds, may recover for such services upon a quantum meruit. Thus an agreement to devise land in consideration for services being void under the statute, the remedy of the one who performs the services is an action to recover the fair and reasonable value."

This rule seems to be well sustained and supported by the cases cited in the notes.

It was not error to refuse postponement. Oregon Code 1930, § 2-107, says:

"A motion to postpone a trial on the ground of the absence of evidence shall only be made upon affidavit showing the materiality of the evidence expected to be

obtained, and what diligence has been used to procure it, and also the name and residence of the witness or witnesses. The court may also require the moving party to state upon affidavit the evidence which he expects to obtain, and if the adverse party thereupon admit that such evidence would be given, and that it be considered as actually given on the trial, or offered and overruled as improper, the trial shall not be postponed.''

Finding no error,. it follows that the judgment is affirmed.

BEAN, C. J., BELT and BROWN, JJ., concur.