Argued April 9, affirmed April 30, petition for rehearing denied
May 28, 1952

# WAGNER v. SAVAGE, as Administrator
## 244 P. 2d 161

*Edward E. Sox,* of Albany, argued the cause for appellant. With him on the brief was Wendell H. Tompkins, of Albany.

*Orval N. Thompson* argued the cause for respondent. On the brief were Weatherford & Thompson, of Albany.

Before BRAND, Chief Justice, and HAY, LUSK, WARNER and TOOZE, Justices.

TOOZE, J.

This is an action of assumpsit to recover the reasonable value of personal services rendered, brought by Elizabeth M. Wagner, as plaintiff, against Rodney J. Savage, as administrator of the estate of Albert M. Savage, deceased, as defendant. Upon stipulation of the parties, the action was tried to the court without the intervention of a jury. Judgment was entered in favor of plaintiff in the sum of $12,500; defendant appeals.

Prior to and on February 1, 1943, one Albert M. Savage was the owner of approximately 40 acres of land located in Linn county, Oregon, and also possessed $1,500 in cash, together with certain household goods, farming equipment, and livestock. He also was leasing a farm located near Peoria, in Linn county, and was living alone thereon. He was a widower, fifty-one years of age. At the time, domestic and farm help was scarce in Linn county, because most of the men and women who ordinarily were available for employment and who lived within a radius of one hundred miles from Portland had taken advantage of the high wages being paid in the shipyards at Portland and at

Vancouver, Washington, and were employed there. Savage was compelled not only to carry on his farm work more or less alone, but also to do his own housekeeping. He found the work too burdensome and proposed to give up his farming operations.

Prior to December, 1939, and for 18 years continuously, plaintiff had resided in Portland, where she owned some property. Her husband died in January, 1939. She had been employed at the Meier & Frank department store in Portland. In December, 1939, she went to Linn county and took up her residence in the home of her mother, one Eliza J. Erickson, who lived on a farm located about seven miles from Halsey, in Linn county. About the first of the year in 1942, plaintiff met Alfred M. Savage at a grange meeting. Thereafter, she and Savage met frequently at grange meetings, and on occasions he would escort her to her home.

In the fall of 1942, Savage first proposed to plaintiff that she move into his home and keep house for him. The parties had several conversations respecting the matter, as plaintiff did not at first accept Savage's proposal. According to the testimony of plaintiff, during the latter part of December, 1942, she and Savage were sitting in his automobile which at the time was parked in front of plaintiff's home, when the following conversation took place:

"Q And where were you when you were in his car, whereabouts,
"A In front of mother's house on the farm.
"Q And who was present?
"A Well, Al and me.
"* * * * *

"Q And what was the conversation that you had between the two of you?

" * * * * *

"A Well, when he asked me to come over and keep house for him and I told him that I was going back to Portland. I was going back to Portland for Meier & Frank and well—he just wouldn't let me go. He said, 'Well, you know you can't go. I need help so badly and you just got to come and help me,' and he just begged me to come. Oh, I still didn't tell him that I would come because it was quite a change for me to make.

"Q Was anything said at that time about compensation?

"A Oh, yes. He told me that if I would come, that anything he had, that in case that he should pass away, it would be left to me, anything he had. He didn't have any family and his wife had died and he didn't have any children, so anything that he had and anything that we would make would be for me in case he passed away.

" * * * * *

"Q Did Mr. Savage say anything at that time about contemplating quitting farming?

"A Well, when he asked me, he said he wouldn't stay on the farm, he wouldn't at all if I didn't come because it was just too hard and he couldn't get anything done. You know, it was just too much for him and he would leave.

"Q Did you give him an answer at that time as to what you would do?

"A Well, no, we talked it over a few times before I told him that I would come.

"Q When was your later conversation with him?

"A Well, it was, I think, about in January that I promised to go."

The final conversation occurred in the home of plaintiff's mother; and in this conversation, according

to plaintiff, Savage repeated his offer to compensate plaintiff for her services in the manner above outlined, and she accepted. Plaintiff immediately undertook the duties of her employment, her first efforts being devoted to cleaning the house in which Savage lived, making some repairs thereto, and rendering the same habitable for a woman. She moved into that home on or about February 1, 1943, and continued to reside there. For more than three years, and continuously during the remainder of the life of Savage, she not only performed the necessary housework, including cooking, washing and mending of clothes, and other usual housekeeping chores, but also worked outside, doing a man's work. She raised chickens and turkeys, helped in haying, and performed other farm duties.

In the summer of 1946, Savage suffered an accidental injury from which he died on August 5, 1946. The record discloses that he had failed during his lifetime to execute a will or other instrument to carry out his promise above referred to, and that he died without compensating plaintiff for her services as he had agreed, or otherwise, or at all. The record firmly establishes the fact that the services of plaintiff were performed pursuant to the oral agreement, and for compensation.

On or about February 8, 1950, plaintiff filed with the defendant, as administrator of the estate of Alfred M. Savage, deceased, her duly verified claim for compensation, in manner and form as required by law. § 19-703, OCLA. Omitting all formal portions, plaintiff's claim is as follows:

"The above named deceased was the owner of a small tract of land and a small amount of money and was leasing a farm and was batching and was unable to operate alone his undertaking and in the

spring of 1943, while in that condition the said Alfred M. Savage promised the claimant that if she would come to his home, do the cooking, assist with the chores, do the housework, care for his clothes, do his washing and assist generally in the operation of his farm during the remainder of his life that he would compensate her in the amount of all that he and she acquired during his lifetime; that the claimant accepted said offer and entered into the performance of said services and did perform the same during the remainder of the life of the said Alfred M. Savage until August 6, 1946; that said Alfred M. Savage promised to compensate the claimant for said services, as aforesaid, and that all of said services were rendered and performed pursuant to said agreement from the spring of 1943 to August 6, 1946, for compensation and not otherwise; that the reasonable value and reasonable compensation for the services thus rendered was and is the sum of Seventeen Thousand Dollars ($17,000.00) and claim is hereby made against the estate of said Alfred M. Savage for said sum of $17,000.00.''

On February 13, 1950, defendant, as such administrator, rejected said claim, and the original claim, together with the endorsement thereon of defendant's rejection thereof, was filed in said estate on February 20, 1950.

On March 6, 1950, plaintiff filed in the circuit court for Linn county, her duly verified complaint in the instant action. Defendant moved that said complaint be made more definite and certain by setting out in full the contents of plaintiff's claim as presented to defendant. On May 11, 1950, plaintiff filed her amended complaint, attaching thereto and making a part thereof a true copy of her verified claim as presented to and rejected by defendant. In part, it is alleged in said amended complaint:

## "I

"That prior to the spring of 1943 Alfred M. Savage was the owner of a small tract of land and a small amount of money and was leasing a farm and batching and was unable to operate alone his undertaking and in the spring of 1943 while in that condition, the said Alfred M. Savage promised the plaintiff that if she would come to his home, do the cooking, assist with the chores, do the housework, care for his clothes, do his washing and assist generally in the operation of his farm during the remainder of his life, that he would compensate her in the amount of all that he and she acquired in his lifetime; that plaintiff accepted said offer and entered into the performance of said services and did perform the same during the remainder of the life of said Alfred M. Savage until August 6, 1946; that said Alfred M. Savage promised to compensate the plaintiff for said services as aforesaid and that all of said services were rendered and performed pursuant to said agreement from the spring of 1943 to August 6, 1946, for compensation and not otherwise; that the reasonable value and reasonable compensation for the services of plaintiff thus rendered was and is the sum of Seventeen Thousand Dollars ($17,000.00).

"* * * * * *

## "III

"That prior to the commencement of this action, plaintiff herein presented to defendant her claim duly verified as required by law; said claim being the same claim as is alleged in Paragraph I hereof; that a copy of said claim is attached hereto marked 'Exhibit A' and by this reference made a part of this complaint; that said claim was rejected by defendant; that more than one hundred twenty days have elapsed since defendant was appointed administrator of the estate of Alfred M. Savage, deceased.

"WHEREFORE, plaintiff demands judgment against defendant for the sum of Seventeen Thou-

sand Dollars ($17,000.00) together with her costs and disbursements herein.''

Defendant, by his answer, denied paragraph I of the complaint, except the allegation that Alfred M. Savage was the owner of a small tract of land and a small amount of money. He admitted paragraphs II and III. Defendant then pleaded three separate and affirmative defenses as follows:

"I.

''That on the 7th day of May, 1948 the plaintiff herein filed suit against the defendant in the Circuit Court of the State of Oregon for the County of Linn, whereby the plaintiff sought the specific performance of the alleged agreement set forth in paragraph I of plaintiff's complaint herein, and asked for a decree of the court that the defendant transfer to the plaintiff all the property and money in the estate of Alfred M. Savage, deceased. That the net value of the property in the said estate, both real and personal, will not equal the sum of $17,000.00, said sum being the amount which plaintiff asks for judgment in her complaint herein. That issue was joined between the plaintiff and the defendant in said case and a trial was had and a decree was rendered in favor of the defendant herein and against plaintiff herein. That a copy of said decree is attached hereto and marked 'Exhibit A' and by reference made a part hereof.

"II.

''That said decree has not been set aside, modified or reversed but that the same remains in full force and effect.

"III.

''That all the questions and issues attempted to be litigated by the plaintiff in this cause of action have been finally adjudicated and settled in said cause so tried by the Circuit Court of the State of Oregon for the County of Linn. That the issues

in both causes are the same and that the only difference being that in the former cause the plaintiff sought to have all the property of the estate as compensation and in the cause herein the plaintiff seeks payment by judgment against the funds of the estate. That in effect the plaintiff is seeking to enforce in this action the same alleged contract which the court has previously denied the plaintiff the right to enforce.

"That this defendant now pleads the decree of said Circuit Court for the State of Oregon for the County of Linn as a final adjudication and as res judicata regarding all questions pleaded and set forth by the plaintiff in her complaint filed herein."

Second: After realleging in substance the matters set forth in his first separate defense, defendant alleged:

"III.

"That on the issues joined, the existence of an agreement between the deceased and the plaintiff being put in issue, the Circuit Court found in a final decree that the plaintiff had failed to prove the allegations of her complaint and that the plaintiff took nothing by reason of her complaint and her complaint was dismissed with prejudice. That said decree has not been set aside, modified, or reversed but that the same remains in full force and effect and that a copy of said decree is attached hereto and marked 'Exhibit A' and by this reference made a part hereof.

"That the very matters concerning the existence of said alleged contract litigated in said Circuit Court for the State of Oregon for the County of Linn are now sought to be relitigated by the plaintiff Elizabeth M. Wagner with the defendant herein, and the plaintiff is estopped from setting up or claiming the existence of an alleged contract between the deceased, Alfred M. Savage and the plaintiff herein."

Third: Defendant pleaded payment for all services performed by plaintiff.

By her reply, plaintiff denied all the allegations of new matter contained in defendant's answer.

Section 19-704, OCLA, in part provides:

"* * *. * * * provided, that no claim which shall have been rejected by the executor or administrator, as aforesaid, shall be allowed by any court, referee or jury, except upon some competent satisfactory evidence other than the testimony of the claimant. * * *"

■■ There is substantial evidence in the record of this case which tends to corroborate plaintiff's testimony and claim that Alfred M. Savage agreed to compensate her for the services she performed at the instance and request of Savage; that she faithfully performed these services for a period of more than three years, and that such services included not only housekeeping work, but also work on the farm outside the house; and the reasonable value of such services. Several witnesses testified respecting the services plaintiff performed, as well as to the reasonable value thereof. As a witness, Eliza J. Erickson corroborated plaintiff's testimony regarding the original agreement between plaintiff and Savage. Defendant offered some testimony regarding the reasonable value of the services performed, and some evidence to support his defense that plaintiff had been paid in full. Although plaintiff's own testimony is not to be disregarded, nevertheless, there is abundant evidence in the record, wholly apart from her testimony, to establish every essential element of her claim, except perhaps the fact of nonpayment. It is well established in this state that, where corroborating testimony is sufficient as to the

performance of service and its reasonable value, claimant's testimony that the claim against deceased employer's estate has not been paid does not have to be corroborated. Payment is a defense which must be pleaded and proved, and upon the defendant rests the burden of proof. The rule is aptly stated by Mr. Justice ROSSMAN in *Littlepage v. Security S. & T. Co.,* 137 Or 559, 560, 3 P2d 752, as follows:

"" * * *. * * * and since payment is an affirmative defense (L. B. Menefee Lumber Co. v. Macdonald, 122 Or. 579 (260 P. 444) ) which the executor in a proceeding of this character has the burden of establishing (Godfrey v. Howes, 91 Or. 98 (178 P. 388) and 24 C. J., Executors and Administrators, p. 859, § 2175) the claimant was not required to introduce proof of nonpayment, in the first instance, nor was she required to corroborate her proof after the executor had produced the slight proof of payment which he presented: Estate of Kukas, 120 Or. 542 (252 P. 947)."

The trial court found as facts that Alfred M. Savage promised to compensate plaintiff for her services in the amount of all that he and she acquired in his lifetime; that plaintiff accepted said offer and entered into the performance of said services and did perform the same during the remainder of the life of said Savage until August 6, 1946; that said Savage promised to compensate plaintiff for said services as aforesaid and that all of said services were rendered and performed pursuant to said agreement from the spring of 1943 to August 6, 1946, for compensation and not otherwise; that plaintiff had not been compensated for the services she rendered to said Savage; and that the reasonable value of the services so performed is the sum of $12,500, no part of which had been paid to plaintiff.

■ This being a law action, the findings of the trial court upon the facts have all the force and effect of a verdict of a jury, and this court is bound thereby if there is any substantial evidence in the record to support them. We are not permitted to weigh the evidence and arrive at our own independent conclusions respecting the facts, as is the case in equity proceedings which are here tried de novo. As before observed, there is substantial evidence in the record to support the findings of the trial court.

The real problem for solution in this case arises on defendant's affirmative defenses of res judicata and estoppel.

It appears from the record herein that on May 7, 1948, the plaintiff herein, as plaintiff therein, filed an amended complaint in the circuit court for Linn county, in which Rodney J. Savage, as administrator of the estate of Alfred M. Savage, deceased, Rodney Savage, Amy E. Dannen, Nellie Hover, Fay Udell, Eugene Mishler, Marvel Mishler, Calvin Mishler, Evelyn Mishler, and Amy E. Dannen, as administratrix of the estate of Susan B. Savage, deceased, were named as defendants. So far as material to the issues now before this court, said amended complaint alleged:

"VI

"That at said time in 1942 and 1943, the said Alfred M. Savage was the owner of some farming equipment and had a lease upon certain farm property in Linn County, Oregon, and possessed money in the bank in the sum of $1,500.00 and owned one of the twenty-acre tracts of land hereinabove described; that at said time, and in the spring of 1943, and said Alfred M. Savage was batching on his said leased farm and on account of war conditions and the high wages required for employees and the inability to get any employees and because

of his inability to cook and keep house, the said Alfred M. Savage was discouraged and unable to carry on his farming work because of his inability to secure a housekeeper and cook, and he stated to the plaintiff that unless she would enter into an agreement with him, as hereinafter alleged, that he would abandon his farming operations and cease living as he was compelled to live upon the farm, that his condition of being compelled to work in the field and to cook and keep house for himself was intolerable to him and made his life unhappy and unendurable, that the lonesomeness of his living was abhorrent to him and his situation was such that he could not enjoy life and he would not continue it in that manner.

## "VII

"That at and when plaintiff and the said deceased Alfred M. Savage were thus situated and the said Alfred M. Savage was of the age of fifty-one years and the plaintiff was of the age of fifty-three years, the said Alfred M. Savage offered and stated to the plaintiff that if she would abandon her home in the city of Portland and would live in his home upon the said rented farm and would contribute her efforts in keeping house, performing the cooking and affording companionship to the said Alfred M. Savage during the remainder of his life, that he would continue his farming operations and with the help of plaintiff, as aforesaid, the two of them together could accumulate and would accumulate a comfortable accumulation of money and property and would be provided with funds for a comfortable living for the remainder of their lives and that he would arrange such papers as would be necessary upon his death to convey all of his property to the plaintiff, upon his death; that the plaintiff accepted said offer and entered into an agreement with the said Alfred M. Savage that she would abandon her home and occupation as above alleged and would live in the home of the said Alfred M. Savage, do the cooking, keep the house, take care

of his clothes, do his washing and make home life happy and agreeable for the said Alfred M. Savage during the remainder of his life.

## "VIII

"That pursuant to said agreement, plaintiff entered into the performance of said contract and went to the home of the said Alfred M. Savage during the spring of 1943 and continuously thereafter remained at said home, cleaned the house, made the same habitable, did the cooking, and provided a comfortable and enjoyable home for the said Alfred M. Savage, performed the washing of his clothes and of the home, and mended his clothes, raised and cared for the chickens and contributed all of her services and efforts to the happiness and comfort of the said Alfred M. Savage and for the success of his said farming operations."

In effect, plaintiff prayed for a decree of specific performance of the oral agreement between herself and Savage.

Defendants answered this amended complaint, denying all the material allegations thereof. The suit came on for trial before the Honorable George R. Duncan, circuit judge, and on December 7, 1949, a decree was entered dismissing the matter with prejudice and without costs to either party. The trial judge made no findings of fact. The decree, so far as material here, reads as follows:

"* * *. Witnesses having been sworn on behalf of the plaintiffs [sic], and witnesses having been sworn on behalf of the defendants and the testimony having been taken. The respective parties having completed their testimony and having rested, and briefs having been filed on behalf of the plaintiffs [sic] and the defendants, and oral arguments having been made, and the Court is now fully advised to the matter. The Court being of the opinion that the equities are with the Defendants

and against the Plaintiff and that the plaintiff is not entitled to recover and that the defendants are entitled to a Decree dismissing the matter with prejudice and without costs to either party.

"It is the Decree of this Court that the plaintiff take nothing herein and that the Complaint of the plaintiff be dismissed with prejudice and that neither party recover their costs and disbursements herein."

In passing, we note that on the trial of the instant litigation a letter written by Judge Duncan to the respective attorneys for the parties under date of November 25, 1949, was admitted in evidence. This letter was not filed or made a part of the record in the suit for specific performance. It is wholly incompetent, irrelevant, and immaterial to any issue in this case, and must be completely disregarded.

As a preliminary to his discussion of the doctrine of res judicata, defendant urges upon us the contention that plaintiff cannot recover upon a quantum meruit in this action, inasmuch as she has pleaded an express contract as the basis of her claim. His contention is expressed in his brief as follows:

"It is well established principle of law that if you plead quantum meruit you may prove a special contract price and the stipulated price becomes a quantum meruit of the case. Toy v. Gong, 87 Or. 454, 461. The converse of the proposition is the point at issue in this case, and the converse is not true. It is not true that a plaintiff can obtain a quantum meruit recovery when she has declared on a special contract. * * * "

Defendant then cites and quotes from certain authorities which he contends sustain his position. *Rockwell Stock Co. v. Castroni,* 6 Colo App 528, 42 P 182; 5 Bancroft's Code Pleading, 4511, § 2457 (Work and Labor).

■ Those authorities are not in point under the facts of this case. The rule enunciated applies only to executory contracts. It does not apply where the plaintiff has fully performed a special contract. The rule applicable to the instant case is well stated by the late Mr. Justice BELT in *Sharp v. McCargar et al.,* 114 Or 435, 441, 236 P 262, as follows:

"It is certain that a cause of action is stated, whether it be considered an action in general *assumpsit* or on an express contract. Since the complaint was not challenged by motion or demurrer, we are of opinion that defendants' contention is untenable if the proof supports either theory. We are not unmindful of the rule that *an action for money had and received cannot be supported by proof of a special executory contract,* for the law will not imply a promise where an express promise exists: 5 C. J. 1386. In other words, the proof must support the theory of the complaint. It is also well established that *where a contract has been fully performed by one party, and nothing remains to be done but the payment of money by the other, the party who has performed his part of the contract may sue for and recover the amount due under the common counts in assumpsit, using the contract as evidence*: Levin et al. v. Strempler, 194 Ill. App. 299; 5 C. J. 1387; 2 R. C. L. 762. The rule that *assumpsit* does not lie where there is an express contract is applicable only when the contract is unexecuted. As quoted in Freese v. Pavloski et al., 39 R. I. 512 (99 Atl. 13):

" 'When a contract has been fully executed and nothing remains to be done but the payment of the price agreed on, the plaintiff may declare specially on the contract, or he may rely on the common counts of *indebitatus assumpsit.*' " (2d and 3d italics ours.)

■ Pleading the agreement between herself and Savage as a basis of her claim for the reasonable value of

services performed was a proper pleading on the part of plaintiff. It was proper to show that her services were performed pursuant to an agreement providing for compensation; it established a contractual relationship between herself and Savage.

The action was tried on the theory of a quantum meruit, and the judgment entered was based upon the reasonable value of the services plaintiff performed, and not upon the value of the real and personal property comprising the estate of Albert M. Savage, deceased. The record shows the value of that property to be in excess of $17,000. At the very outset of the trial, in discussing an objection made by defendant to the testimony of plaintiff respecting her oral agreement with Savage, the court stated: "And the plaintiff contends that they are here on a contract quantum meruit."

Respecting his plea of res judicata, defendant states in his brief:

"The elemental requirements of res adjudicata are identity of person and claim, and a final adjudication. * * *

" * * * * * *

"There can be no dispute that there is identity of parties here and that in the prior determination there was a final adjudication of the matters in dispute. The critical question is whether by the present action the plaintiff has sought to relitigate the same claim or demand she presented in her previous case. Despite any argumentative labels, the record will show that when the administrator was presented with the plaintiff's claim the administrator was being asked to approve the identical claim which Judge Duncan for the Circuit Court of the State of Oregon had previously denied. * * *"

■ The law is well established that a final judgment rendered by a court of competent jurisdiction, on the

merits, is conclusive as to the rights of the parties and their privies, and as to them constitutes an absolute bar to a subsequent action involving the same claim, demand, and cause of action. However, if the two suits do not involve the same claim, demand, and cause of action, such effect will not ordinarily be given to the prior judgment. To give such effect, there must not only be identity of subject matter, but also of the cause of action, so that a judgment in a former action does not operate to bar the subsequent action, where the cause of action is not the same, although each action relates to the same subject matter.

■ But if the subsequent proceeding be between the same parties, or their privies, and is based upon the same claim or cause of suit as that in the prior case, the judgment in the first suit is not only a bar as to all matters actually determined therein, but also as to every other matter which the parties might have litigated and had decided as incident to or essentially connected therewith, either as a matter of claim or defense. However, if the subsequent action is upon a different claim or demand, the former judgment can only operate as a bar or an estoppel as against matters actually litigated or questions directly in issue in the former action. *Winters v. Bisaillon,* 153 Or 509, 513, 57 P2d 1095, 104 ALR 968; *Ruckman v. Union Railway Co.,* 45 Or 578, 581, 78 P 748, 69 LRA 480; 30 Am Jur, Judgments, 925, § 180.

■ As a general proposition, it may be stated that the principle of res judicata applies as well in equity as at law, and that a final decree on the merits in a suit in equity will operate as a bar or estoppel to any further litigation between the same parties, or their privies, on the same cause of action in a court of law. 50 CJS, Judgments, 32, § 609.

Section 2-718, OCLA, in part provides:

"The effect of a judgment, decree, or final order in an action, suit, or proceeding before a court or judge thereof of this state or of the United States, having jurisdiction to pronounce the same, is as follows:

"(1) * * * * *

"(2) In other cases, the judgment, decree, or order is, in respect to the matter directly determined, conclusive between the parties and their representatives and successors in interest by title subsequent to the commencement of the action, suit, or proceeding, litigating for the same thing, under the same title, and in the same capacity."

Section 2-721, OCLA, provides:

"That only is deemed to have been determined by a former judgment, decree, or order which appears upon its face to have been so determined, or which was actually and necessarily included therein or necessary thereto."

■ It is manifest that plaintiff's cause of action in the instant litigation is entirely different from the cause of suit alleged in the prior proceeding in equity for specific performance of the oral agreement to compensate plaintiff by giving her all the property owned by the decedent, Albert M. Savage, at the time of his death. Here, plaintiff is suing in quantum meruit for the reasonable value of personal services she performed for Savage.

The decree of the trial court in the former suit for specific performance does not show on its face any determination other than that the equities were in favor of defendants, and that plaintiff was not entitled to recover in that proceeding. There is no finding by the court that the oral agreement pleaded and relied upon by plaintiff did not in fact exist, nor that plain-

tiff did not fully and faithfully perform her part of the agreement. Neither were such findings of fact necessarily included in or essential to the court's decree. The decree on its face is entirely consistent with the existence of such a contract and the performance of the claimed services by plaintiff. This will become apparent as we discuss the law regarding the remedy of specific performance in suits involving oral agreements to make a will or transfer property in consideration of personal services performed, or to be performed.

At the outset, it must be borne in mind that specific performance of a contract is not a matter of right in equity, but is more a matter of grace, and rests in the sound discretion of the court, controlled by equitable principles. *Dixon v. Simpson et al.,* 130 Or 211, 279 P 939; *Wetherby v. Griswold,* 75 Or 468, 147 P 388; *Hawkins v. Doe,* 60 Or 437, 119 P 754, Ann Cas 1914A, 765.

Before a court of equity may exercise its discretion to enforce specifically an oral contract to devise, there must be proof of a binding agreement that is clear, just, definite, reasonable, and mutual in its obligations, in all parts. Such a contract is within the statute of frauds; and in order to remove such an agreement from provisions of the statute and enforce its specific performance, there must be adequate proof to establish the contract to the satisfaction of the court, accompanied by such evidence of part performance as will make it a fraud upon the plaintiff not to complete the contract. *Mathews v. Tobias et al.,* 101 Or 605, 609, 201 P 199.

But more important to the issues in the instant case is the well-established rule that equity will not decree specific performance where there is a plain,

adequate, and complete remedy at law.   58 CJ, Specific Performance, 852, § 7.

■ Ordinarily, a person performing services for another, under an oral agreement to convey land in payment therefor, either by deed or devise, cannot have specific performance of the agreement where he has a plain, adequate, and complete remedy at law to recover the reasonable value of his services. It is only in cases where the services performed are of an unusual character, involving elements other than the actual work itself, and where compensation in money would not be adequate, that specific performance of such an oral agreement will be decreed. *Roadman v. Harding,* 63 Or 122, 125, 126 P 993; *Cooper v. Colson,* 66 NJ Eq 328, 58 A 337, 338, 105 Am St Rep 660.

In *Roadman v. Harding,* supra, the late Mr. Justice BURNETT stated the following:

"Again, it is necessary, in order to support a decree for specific performance based upon mere verbal dealings between the parties, that there be performance of the agreement by the plaintiff to such an extent as to render it inequitable to deny him the specific relief claimed. *If he has a plain, adequate, and complete remedy at law to recover the value of his services, he cannot have specific performance of the oral agreement which he describes.*

"The utmost that the plaintiff can claim in this case is that he has rendered services for the defendants, or some of them, for which he has not been reimbursed. *In such a case an action at law on the quantum meruit would completely right any wrong which the plaintiff has suffered* on account of the refusal of the defendants to comply with their alleged contract." (Italics ours.)

In *Cooper v. Colson,* supra, at page 338 of 58 A, the New Jersey court said:

"* * *. But the mere proof of the performance of services is not sufficient. Such services may be adequately compensated for by a recovery of damages. Such services thus performed are of no greater efficacy to take the case out of the statute than would be a payment in whole or in part of the consideration money agreed to be paid upon a parol contract to convey land for cash. *It must appear,* to constitute ground for a decree for the specific performance of an oral agreement to convey land, founded upon alleged services, *that the services were in some respects of an exceptional character, and that it is obvious that the parties not only did not intend that they should be measured by ordinary pecuniary standards, but that they were of such peculiar character that it is impossible to estimate their value by any such standard.*" (Italics ours.)

This New Jersey decision was cited and quoted from with approval by this court in *Brennen v. Derby et al.,* 124 Or 574, 582, 265 P 425.

No blood or other close relationship existed between plaintiff and Savage at the time they entered into the oral agreement under which plaintiff performed the services she did perform for him. The services she rendered were neither exceptional nor extraordinary, though they may have been arduous. They were not of such peculiar character that adequate compensation in money cannot be made therefor. Because plaintiff had a plain, speedy, adequate, and complete remedy at law, she was not entitled to a decree of specific performance as prayed for in her former suit. Nor could she recover in that suit on a quantum meruit for the reasonable value of her services. To recover such reasonable value, she necessarily was compelled to

proceed at law. Under the existing circumstances, she had no standing whatever in equity. The trial court properly denied specific performance. However, under the express provisions of § 2-721, OCLA, the decree of the court in that suit is not res judicata respecting the existence or nonexistence of the contract as claimed by plaintiff, nor as to the performance of the services she alleges.

There also is authority for the proposition that a decree of a court of equity denying specific performance of an oral agreement of the type involved here is not available as a defense of res judicata and as a bar in a subsequent action on quantum meruit. *Richter v. Derby,* 135 Or 400, 295 P 457; *Brennen v. Derby,* supra; *Eisenbeis v. Shillington,* 349 Mo 108, 159 SW2d 641; *Bottomly v. Parmenter,* 85 NH 322, 159 A 302; *Ney v. Zimmerman,* 201 NYS 788, 207 App Div 195; *Maxfield v. Dertadian,* 66 NYS2d 346, 271 App Div 861; *Gall v. Gall,* 45 NYS 248, 17 App Div 312; *Thayer v. Harbican,* 70 Wash 278, 126 P 625; *Nickoll v. Racine Cloak & Suit Co.,* 194 Wis 298, 216 NW 502; 50 CJS, Judgments, 98, § 653.

In *Brennen v. Darby,* supra, plaintiff brought suit for specific performance of an alleged oral promise by one T. W. Steiger to devise and bequeath his real and personal property to her, in consideration of her remaining with him during the remainder of his life, and to render unto him companionship, help, and association as a dutiful child. Plaintiff alleged complete performance on her part of the terms of the agreement. Steiger died without having fulfilled his promise, and suit was instituted against the administrator of his estate. The trial court entered decree in favor of plaintiff, and the administrator appealed.

When plaintiff was three years of age, she had

been left by her parents in the Steiger home. Thereafter, that was her home. She was reared and treated almost as a daughter, and an extremely close relationship existed between her and the Steigers. When plaintiff was 13 years of age, marital difficulties arose between Steiger and his wife, culminating in divorce. At that time plaintiff's father proposed to remove plaintiff from the Steiger home. It was to avoid separation from plaintiff that Steiger then made his oral offer. The offer was accepted, and, acting pursuant to the agreement, plaintiff remained with him until his death.

This court reversed the decree for specific performance. In the opinion the court called attention to the availability of an action at law on quantum meruit, citing in support thereof the cases of *Farrin v. Matthews,* 62 Or 517, 124 P 675, 41 LRA NS 184; and *Roadman v. Harding,* supra.

After quoting with approval from the decision in *Cooper v. Colson,* supra, this court, at page 582, said:

"Under the doctrine announced by the case of Cooper v. Colson, supra, this plaintiff has a complete remedy at law, and may recover full compensation for all services performed prior to August 18, 1925, the date of the death of T. W. Steiger, when her services automatically ceased. We will observe that the statute of limitations does not begin to run until the services have been fully performed. According to the plaintiff's own testimony, the services that were performed by her were not such services as will remove the cause from the protection of the statute of frauds. * * * We repeat her testimony to the effect that the services she rendered in consideration of the making of the contract were 'general housework, caring for the house.' * * * *"

Plaintiff in that case then commenced an action in assumpsit to recover for the reasonable value of the services she had performed for Steiger during his lifetime, pursuant to the terms of the agreement mentioned. In that action she was awarded judgment in the sum of $23,000. On appeal to this court, the judgment was affirmed. *Richter v. Derby,* supra.

In referring to the testimony of plaintiff respecting the agreement between herself and Steiger, this court, at page 403, stated:

"This is evidence of a complete contract, an agreement to perform labor on the part of the plaintiff, and a promise to pay on the part of defendant's deceased. * * *"

Speaking of corroborating testimony necessary in such a case, the court, at page 406, said: *"There was abundant corroborating testimony of an express contract.* There is evidence of the value of the services, and although not necessary, it is also corroborated." (Italics ours.)

Answering another contention that the contract plaintiff attempted to prove was within the statute of frauds, the court, at page 407, remarked:

"It is contended by appellant that the contract attempted to be proved is within the statute of frauds, and that evidence thereof was not admissible because the contract was not in writing. The rule stated in 27 C.J., p. 363, is:

" 'One who has performed labor and services under a contract which cannot be enforced because within the statute of frauds, may recover for such services upon a quantum meruit. Thus an agreement to devise land in consideration for services being void under the statute, the remedy of the one who performs the services

is an action to recover the fair and reasonable value.'

"This rule seems to be well sustained and supported by the cases cited in the notes."

In *Maxfield v. Dertadian,* supra, the New York court said:

"The judgment in the Supreme Court action entered in the Herkimer County Clerk's office on May 20, 1943, which dismissed, on the merits, an action brought by respondent (Maxfield) to compel specific performance of an alleged agreement to the effect that, in consideration of services performed and to be performed, decedent agreed that he would, by suitable provision in his last will and testament and in full compensation for said services, leave all of his property, both real and personal, to respondent, does not bar respondent from obtaining compensation as a creditor of the estate for the value of the services performed. Gall v. Gall, 17 App. Div. 312, 45 N. Y. S. 248; Bair v. Hager, 97 App. Div. 358, 90 N. Y. S. 27; Chambers v. Boyd, 116 App. Div. 208, 101 N. Y. S. 486. * * *"

We find no prejudicial error in the record. The judgment is affirmed.