[Filed May 19, 1885.]

## CLAIBORNE NEIL *v.* J. C. TOLMAN, J. HOUCK, AND P. DUNN.

### AND

## LEANDER NEIL AND WIFE *v.* SAME.

FORMER JUDGMENT — RES JUDICATA. — A former judgment is final and conclusive between the parties, not only as to the matter actually determined, but as to every other matter which the parties might have litigated and had decided as incident to, or essentially connected with, the subject-matter of the original action, either as a matter of claim or defense.

ID. — DEFAULT. — A judgment by default is attended with the same legal consequences (by way of estoppel) as if there had been a verdict for the plaintiff.

WATER RIGHTS. — A former decree for want of answer having established the defendant's right to divert the waters of Bear Creek through the ditch in controversy, that right cannot be again litigated between the same parties.

JACKSON COUNTY. Plaintiffs appeal. Affirmed except as to quantity of water the defendants are entitled to.

*J. A. Neil*, and *George H. Williams*, for Appellants.

*H. K. Hanna*, *John Kelsey*, and *C. B. Bellinger*, for Respondents.

LORD, J.—These suits, being similar, were consolidated and tried together, the same evidence being applicable in both cases. They were brought to enjoin the defendant from diverting the water of Neil or Bear Creek.

The complaint in the case of Claiborne Neil alleges in effect that the plaintiff is the owner of certain land in Jackson County, which lies along Neil Creek, and embraces both banks and the channel of such creek; that the plaintiff is entitled to the use of all the water of such creek for irrigation, watering of stock, and for domestic purposes, and that during the summer months he needs all such water therefor; that he has so used the water since 1855, except when wrongfully deprived of it by the defendants; that the defendants have a ditch leading from a point on Neil Creek about one mile above plaintiff's land, along the foot of the hills and away from said stream about two miles to Clayton Creek; that by means of such ditch defendants divert the water of Neil Creek away from and around plaintiff's land, and use up and waste such water in irrigating several farms, so that it never returns to said Neil Creek; that at no time prior to 1875 did defendants use more than sixty inches of water through such ditch, but that since that date defendants have diverted more than that quantity, and that during the last three years they have diverted all the water during the summer months except about fiften inches, and have diverted during said three years more than one hundred and fifty inches, under a six-inch pressure, and are now diverting nearly all of the water of said creek, and plaintiff has now no water for irrigating, and his crops and orchards are suffering from the want thereof; that defendants threaten to continue such diversion, etc.; that plaintiff has always objected to and protested against such diversion; yet the defendants have by force and threats persisted therein.

The complaint in the second case—that of Leander Neil and wife—is, in effect, the same as that in the case of C. Neil.

The answer in the case of C. Neil denies plaintiff's allegations as to his right to the use of all the water of Neil Creek, and denies his right to use, or that he needs any of such water,

except so much as remains in said creek after the defendants have taken therefrom so much as they are entitled to, which amount is stated in a subsequent part of the answer; denies the continuous use alleged by plaintiff. The answer denies all the other allegations of the complaint, except that as to the ownership by plaintiff of the land described, with certain qualifications which appear in the affirmative allegations of the answer.

The answer alleges, affirmatively, that in the year 1852 the ditch mentioned in the complaint was constructed by the defendants and their grantors for irrigation and other purposes, and that they and their grantors have had the continuous and uninterrupted use and enjoyment of the water so taken by them adversely to plaintiff, and all other persons, too, and until they were enjoined by this court in 1883, and that they have had the use of said ditch for more than thirty years last before the commencement of this suit, and that they diverted a part of said stream and not the whole of it. The answer further alleges that defendants diverted by their said ditch not less than one hundred and sixty inches of water by its natural flow, and under no other pressure than a fall of three fourths of an inch to the rod. That since the year 1867 they have diverted water in said ditch from said creek as follows: From January 1st to August 15th, one hundred and sixty inches; from August 15th to September 20th, one hundred inches; and from September 20th to January 1st, sixty inches, and no more, by its natural flow through a ditch having a fall of three fourths of an inch to the rod, and no other pressure and no greater quantity than herein stated. The answer further sets up a former adjudication of the same matter, by decree of injunction rendered by the Circuit Court of Jackson County, Oregon, on June 16, 1873. All the material allegations in the answer are denied by the replication.

The questions raised and contested by the pleadings in this suit are: (1) Did the defendants acquire any right as against plaintiff to divert the water by reason of prior appropriation? (2) Have they acquired any title by prescription from adverse use? (3) Was there any former adjudication which can estop

the plaintiff in this suit? Our examination of these defenses will be in the inverse order in which they are here presented, and will extend only so far as the decision of the cases may require.

The first inquiry then, will be: Has there been a former adjudication which estops the plaintiff? In June, 1873, the defendants began a suit in equity, in the Circuit Court of Jackson County, to restrain the plaintiff Neil from diverting the water of the ditch in question. The complaint in that case particularly described the ditch of which it is alleged they were the owners, and that said ditch and the waters thereof were necessary for the irrigation of the meadows, orchards, and grain crops of the plaintiffs, and for the use of their farms, and that the defendant at divers times had broken said ditch and diverted the water therefrom, so as to prevent the plaintiffs from the enjoyment and free use of the benefit thereof, and he threatened to continue so to do. The plaintiffs prayed that the defendant might be forever restrained from breaking or molesting the ditch, and from diverting the waters thereof. The record shows that the defendant was duly served with process, but made default, and a decree was rendered in accordance with the prayer of the complaint. That the ditch in that and this case is the same identical ditch is not disputed. In both cases the facts show that the ditch tapped and received its supply of water from Neil or Bear Creek, which was conducted by means of it to the farms of the plaintiffs, for the purposes of irrigation, and which otherwise would have flowed down the channel of the creek through the farm of the present plaintiff. This is necessarily so, from the facts as stated, and renders all discussion of the water and ditch, separately considered, as applied to the rights sought to be established and the injury prevented, as idle and unmeaning. The object of the former suit was plainly to prevent the plaintiff Neil from diverting and using the water conducted from Bear Creek by this ditch, and to protect the defendants in the use of such water thus derived for the purposes of irrigation. The object of the present suit is to prevent the defendant from diverting the waters of Bear Creek by

means of the same ditch for the uses of irrigation, and to protect the plaintiff in the use of such water as the riparian proprietor.   In either case, the right of the plaintiff to the water rested upon the same principle, and the gist of the suit then and now is to determine the right to this water.

The record discloses that the diversion of the water from Bear Creek has been for years the subject of contention and dispute.   Prior to the suit instituted in 1873, the plaintiff claimed that the defendants had no right to take the water from the creek and run it in this ditch to irrigate their farms; that he was entitled to have the water of the creek flow down its channel as a riparian owner; and it was evidently in assertion of his right as such that he broke the ditch and turned the water back where he conceived it lawfully belonged.   On the other hand, the defendants claimed that they had such right, and to establish it, settle the contention, and afford the plaintiff an opportunity to make whatever defense he had, the former suit was brought.   The injury complained of, and to be prevented by that suit, was the deprivation of the water.   The breaking of the ditch only occasioned the injury.   Certainly, if the plaintiffs in that suit were not entitled to the use of the water as alleged, and if the defendant was entitled to such use as he now alleges in the present suit, such facts would have constituted a complete defense.   The rule is well settled that "a party cannot relitigate matters which he might have interposed, but failed to do, in a prior action between the same parties or their privies in reference to the same subject-matter."   (Wells Res. Adj. § 251, citing *Hackworth* v. *Zollars,* 30 Iowa, 433; *Hites* v. *Irvine,* 13 Ohio St. 283; *Le Guen* v. *Gouverneur,* 1 Johns. Cas. 436; *Gray* v. *Dougherty,* 25 Cal. 266.)   In some of the cases the rule has been carried to the extent of declaring that "if a party fails to plead a fact he might have pleaded, or fails to prove a fact he might have proved, the law can afford him no relief."   (Wells Res. Adj. § 251; *Bell* v. *McColloch,* 31 Ohio St. 397; *Ewing* v. *McNairy,* 20 Ohio St. 322; *Embury* v. *Conner,* 3 N. Y. 511; *Covington etc. Co.* v. *Sargent,* 27 Ohio St. 233; *Le Guen* v. *Gouverneur, supra.*)   In other cases it is

said that the test is to determine whether the matter which is claimed to be barred might have been litigated under the pleadings. (*Columbus & S. R. Co.* v. *Watson*, 26 Ind. 52; *Duncan* v. *Holcomb*, 26 Ind. 378; *Sheets* v. *Selden*, 7 Wall. 416; *Beloit* v. *Morgan*, 7 Wall. 619; *Henderson* v. *Henderson*, 3 Hare, 115.)

The finality of judgments rests upon the maxim, *interest reipublicæ ut sit finis litium.* "It is for the public good," says Mr. Broom, "that there be an end of litigation; and if there be any one principle of law settled beyond all question, it is this, that whensoever a cause of action, in the language of the law, *transit in rem judicatam*, and the judgment remains therein in full force and unreversed, the original cause of action is merged and gone forever." (Broom Leg. Max.) "It is not only final," says Radcliffe, J., "as to the matter actually determined, but as to every other matter which the parties might have litigated in the cause, and which they might have had decided. The reasons in favor of this extent of the rule appear to me satisfactory; they are found in the expediency and propriety of silencing the contention of parties, and of accomplishing the ends of justice by a single and speedy decision of all their rights. It is evidently proper to prescribe some period to controversies of this sort, and what period can be more fit and proper than that which affords a full and fair opportunity to examine and decide all their claims. This extent of the rule can impose no hardship. It requires no more than a resonable degree of vigilance and attention. A different course might be dangerous and oppressive; it might tend to unsettle the determinations of law, and open a door for infinite vexation." Nor is the principle of the rule affected, that the judgment was obtained by default. "The rule," says Mr. Freeman, "that a judgment is conclusive of every fact necessary to uphold it, admits of no exception; and is equally applicable whether the final adjudication resulted from the most tedious and stubborn litigation, or from a suit in which no obstacle was possible to delay or defeat plaintiff's recovery. A judgment by default is attended with the same legal consequences as if there had been a verdict for the plaintiff. There exists no solid distinction

between a title confessed and one tried and determined."
(Freem. Judm. and note.) "So the neglect of a defendant to
answer, and a decree *pro confesso*, are equivalent to an admis-
sion of the allegations of the bill as to all parties against whom
such a decree passes." (6 Wait Act. and Def. 71; *Brummagim*
v. *Ambrose*, 48 Cal. 368.) "The judgment is final and con-
clusive between the parties, not only as to the matter actually
determined, but as to every other matter which the parties might
have litigated and had decided as incident to or essentially con-
nected with the subject-matter of the litigation, within the purview
of the original action, either as a matter of claim or defense."
(Miller, J., in *Jordan* v. *Van Epps*, 85 N. Y. 427. See also
*Barrett* v. *Failing*, 8 Oreg. 152; *Bloomer* v. *Sturges*, 58 N. Y.
168; *Embury* v. *Conner*, 3 N. Y. 512.) Nor is it any objec-
tion that "the former suit embraced more subjects of controversy
or more matter than the present; if the entire subject of the
present controversy was embraced in it, it is *res judicata*. No
man is to be twice vexed with the same controversy." (*Bigelow*
v. *Winsor*, 1 Gray, 302; *Tioga R. R.* v. *Blossburg R. R.* 20
Wall. 137.)

The right sought to be established and determined in this suit
involves, in fact, the same identical question which was pre-
sented in the former suit, only with this difference, a change
of characters as parties to the suit. It follows, as the court
below decided, that the former decree is a bar to this suit, in
that it established the right of the defendant to divert the water
from Bear Creek by means of the ditch in question. But it did
not determine how much or the quantity of water the defendants
were entitled to divert. This fact was recognized by the emi-
nent counsel for the plaintiff, and he sought to show, by an
able and elaborate investigation of the evidence, that the conclu-
sion which the court below reached as to the quantity of water
the defendants were entitled to divert could not be sustained
upon the evidence.

The record discloses that the court below gave to this case
that careful investigation which its importance to the rights
involved demanded, and only reached the result now complained

of after such deliberation. Since the argument I have re-examined the testimony with much care and attention, seeking to ascertain the true quantity of water which the defendants are entitled to divert, and I confess the result of my inquiries has not fully satisfied me that there is error in the amount adjudged by the court below. It is suggested, however, that there are some facts and circumstances which may possibly have escaped the attention of the court below, or perhaps not received that full consideration to which they are supposed to be entitled by their weight and importance. Among them are the gradual enlargement of the ditch by frequent cleaning, and the natural "wear and tear" of flowing water, the building of a flume with a certain incline, which presents less obstruction to the flow of the water than the natural surface, all of which, and together, it is claimed, have materially contributed to increase the quantity of water much beyond that formerly or originally diverted. It is not doubted but that these causes may have produced that result, if no precautions were taken to prevent it at the point of diversion. But there is some evidence that such precaution was taken; other, that it was insufficiently done; other, in effect, that it was not done at all. The measurements of the water vary very much, and some of them are taken at places and under circumstances that render them unfit tests. The witnesses are all reputable, good citizens, testifying to what they understand and believe to be a correct state of facts. In such conflict of testimony it is always not only a matter of delicacy, but of difficulty, to adjust the conflicting statements, and to determine the right of the matter. An approximation to it is all that can be reasonably expected.

Without reviewing the evidence, it is thought, therefore, in view of all the facts, and the rights and equities of the parties, the decree should be modified in the particular, viz., 120 inches instead of 160 inches, from January 1st to August 15th; but in all other respects the decree is affirmed; and it is so ordered. In the other case we think the evidence shows the right by prescription. The costs and disbursement will be equally divided between the parties.