Argued May 20, affirmed June 3, petition for rehearing
denied July 1, 1959

## NUSOM et ux v. FROMM et ux

340 P. 2d 186

*W. C. Winslow* and *Norman K. Winslow,* of Salem, argued the cause and filed a brief for appellants.

*Bruce Spaulding,* of Portland, argued the cause for respondents. On the brief were Mautz, Souther, Spaulding, Denecke & Kinsey, Portland.

Before MCALLISTER, Chief Justice, and LUSK, SLOAN and CRAWFORD, Justices.

CRAWFORD, J. (Pro Tempore).

Plaintiffs sued at law to recover $7,000 paid to J. D. and Margaret Turnidge for the use and benefit of defendants. Defendants denied generally and plead estoppel arising from res judicata. Plaintiffs recovered judgment for $5,000. Judgment notwithstanding the verdict was entered in favor of defendants, and plaintiffs appeal.

In the one assignment of error three propositions are presented:

1. The timeliness of the order granting judgment notwithstanding the verdict and the right of the court to consider testimony that had been excluded in disposing of such motion.
2. Res judicata.
3. Sufficiency of the evidence to show defendants were indebted to plaintiffs.

The controversy arises from an arrangement entered into in December 1949, wherein plaintiffs leased land and farm equipment from J. D. and Margaret Turnidge, paying as rental one-third of crops produced. The lease gave plaintiffs the right during its term to purchase the farm and equipment for $60,000, applying rentals paid, on account of which $7,000 accrued. Prior to the expiration date of the lease plaintiffs and defendants entered into a "deal" to purchase the property for $60,000 from David E. and Wilma B. Turnidge, to whom the contract had been assigned. Defendants paid Turnidge $13,000 and Turnidge credited the additional sum of $7,000 previously paid by plaintiffs to Turnidge as rental. Plaintiffs were to operate the farm under a share-crop arrangement with defendants, plaintiffs' share reflected in rentals to be applied as payment by plaintiffs to defendants toward a one-half interest in the farm. The "deal" was reduced to writing, in part, but never signed. It gave defendants the right to sell the property at any time, and in the event of sale the proceeds were to be applied, as follows:

"In the event the parties of the first part should sell said premises before the expiration of this lease, then after payment of all of the expenses

of the operation and the payment of the sum of thirteen thousand dollars to the parties of the first part, together with interest thereon at the rate of five per cent per annum from October 4, 1950, and the payment of the sum of seven thousand dollars to the parties of the second part, together with interest thereon at the rate of five per cent per annum from October 4, 1950, and together with the payment of all the moneys advanced or credited to either of the parties hereto, together with interest thereon at the rate of five per cent per annum from the date of such advance or credit, then the parties of the second part shall be entitled to one-half the increase over the amount invested for their work, labor and services in connection with the operation."

The farm was operated during 1951 at a loss, and substantial expenses were incurred. In the fall of 1951 the farm was sold for $53,000, of which $13,000 was paid to defendants, the buyer assuming the $40,000 balance owing Turnidge. Plaintiffs received no part of the $13,000. In December 1951 plaintiffs sued defendants for an accounting, for determination of outstanding claims against the farm operation, for return to plaintiffs of their down payment of $7,000, together with any profit made on the sale, and for general equitable relief. The late Judge Rex Kimmell dismissed the complaint, finding "that the issues raised by plaintiffs' complaint and the denial thereof contained in defendants' answer have not been established by a preponderance of the evidence." No appeal was taken and the present action was instituted.

■ In their *first* proposition plaintiffs discuss the timeliness of the order granting judgment notwithstanding the verdict in these words: "Now first it will be noted that the statute makes no provision as

to the time within which such a judgment must be entered. We are raising the question that the judgment herein was not timely entered. But the most serious question which we desire to present is: Can a Court act upon evidence which it has excluded in considering and passing upon such a motion?" So far as timeliness is concerned, the original judgment was dated and entered July 16, 1956. The judgment notwithstanding the verdict was entered September 6, 1956, on the fifty-second day. The term had not expired. ORS 4.130 and 17.615.

Plaintiffs then present the issue of the authority of the trial court to determine that a directed verdict should have been entered under ORS 18.140(1) on the ground of res judicata "when that evidence was not before the Court." Defendants had offered the pleadings in the prior equity suit in evidence but the offer had been objected to and the objection sustained. The court then denied the motion for a directed verdict and the case was submitted to the jury with the result indicated above. However, in their reply in this action plaintiffs copied and incorporated the res judicata plea in the equity suit, consisting of all the pleadings. Although not in evidence, these pleadings were nevertheless very much in this case and the court was entitled to consider the same at any time. The reply constituted part of the record upon which the issues tried were framed. Both sides pleaded the same record. Its accuracy is not questioned.

 The trial court action was timely and its consideration of the pleadings, including that alleging res judicata, was entirely proper. Plaintiffs argue the affirmative allegations are presumed to be denied. This presumption, however, is overcome when the defendants allege the same facts in their answer.

The *second* proposition concerns res judicata on the merits. Plaintiffs argue the only thing decided in the equity suit was joint venture and defendants' counter claim, both being denied.

In the equity suit joint venture, accounting, determination of claims and profits *and* return of the $7,000 were all involved, as well as a general prayer, and submitted to the court. An examination of the pleadings in that suit leads to the inescapable conclusion that the primary issue there, as here, revolved around the item of $7,000. The origin of the dispute was fully alleged and the issues submitted, including the right to the $7,000. Not only was the issue of joint venture disposed of, but the court likewise resolved all issues raised by defendants' further and separate answer and the denial thereof contained in plaintiffs' reply. The issues so determined included the right of plaintiffs to the $7,000.

The present case is the same as the equitable one, disguised as an action at law. The same facts and the same issues could have been, and in fact were, presented in the prior one. Both spring from the same evidence. The "deal" of 1950 conceived both the equity suit and this law action. This switch does not avoid the estoppel bar of res judicata. *Kelley et ux. v. Mallory et ux.*, 202 Or 690, 277 P2d 767; *United States National Bank v. Shehan*, 98 Or 155, 193 P 658. The *cause of action* and not the *form* in which a subsequent action is brought determines whether the doctrine of res judicata applies, since that doctrine always applies where the parties are the same and a subsequent action is sought to be maintained on the same claim or demand. *Associated Oil Company v. Edgerton et al.*, 158 Or 606, 77 P2d 416; *White v. Ladd*, 41 Or 324,

69 P 739; Freeman on Judgments, 5th Edition, page 1443, section 684; Restatement of Judgments, § 63.

Plaintiffs stress in argument and brief their theory that the trial court's determination that no joint venture existed in the equity suit stripped that court of all jurisdiction to adjudicate the $7,000 or other issues raised therein. But "joint venture" is little more than an artificial designation of a relationship akin to a partnership out of which rights and responsibilities arise, which equity will recognize and enforce. But there are many other similar relationships subject to equity jurisdiction. The fact that joint venture is referred to in the complaint in the equity suit, and specifically referred to in the decree dismissing generally, does not remove all equitable jurisdiction of the facts as alleged and put at issue if same are sufficient to invoke the aid of equity. Plaintiffs did not stand or fall on "joint venture." Other grounds of equitable jurisdiction were pleaded, tried and disposed of. And these are accounting, determination of claims and profits, and specifically recognition and return of the $7,000, and other appropriate relief.

Other grounds existed for granting equitable relief than joint venture. We are unable to conclude that "the only things adjudicated by said former proceedings were that a joint venture did not exist." The "credit" which plaintiffs were seeking to establish and recover arising from the operations of these parties, whether it be designated as arising from a "joint venture" or otherwise was certainly impleaded, submitted to the court and a decree on the merits rendered adversely thereto. A cause of action was set forth in the equity complaint which, if true, would have entitled plaintiffs to recover, and this was not necessarily related to joint venture.

"The right, if any, to an accounting in both suits sprang from the same evidence, i.e., the agreement between the parties dated April 2, 1948. Plaintiff contends that this agreement gave rise to a fiduciary relationship warranting the interposition of equity for the purpose of an accounting. In 1 CJS 655, Accounting, § 19, we find: 'Where a fiduciary or trust relationship exists between the parties * * * equity will assume jurisdiction to compel an accounting, and no partnership relation need exist. No particular words are necessary to create the relation * * *.' Also see Templeton v. Hollinshead et al., 119 Or 620, 624, 250 P 747. Proof of 'partnership' was, therefore, unnecessary and unimportant if the agreement appended as an exhibit gave rise, in fact, to a fiduciary relationship obligating the defendant to account to the plaintiff." *Kelley et ux. v. Mallory et ux.,* supra, 202 Or 690, 704, 277 P2d 767.

In the decree in the equity suit Judge Kimmell found, after hearing the evidence, arguments and reading briefs and after taking the case under advisement "that the issues raised by plaintiffs' complaint and the denial thereof contained in the defendants' answer have not been established by a preponderance of the evidence and that the issues raised by defendants' further and separate answer and the denial thereof contained in plaintiff's reply have not been established by a preponderance of the evidence and concludes as a matter of law that the enterprise referred to in the pleadings herein does not amount to a joint venture and that plaintiffs' complaint and defendants' further and separate answer should both be dismissed without relief to either party."

■ A dismissal in equity, without qualifying words, is presumably a final decision on the merits for purpose

of applying the doctrine of res judicata. *Kelley et ux. v. Mallory et ux.*, supra.

Both the prior equity suit and the present action at law have the same, in fact, the identical operative facts, the same factual and legal background, and being between the same parties and based on the same contract and cause of action, though in disguise, and enjoying the same "delict or culpatory act", it follows that the prior adjudication must be accepted as res judicata in this case. *Wagner v. Savage, as Adm'r.*, 195 Or 128, 244 P2d 161; *Kelley et ux. v. Mallory et ux.*, supra.

Affirmed.