Argued December 6, 1960, affirmed February 21, 1961

# SLATE CONSTRUCTION COMPANY *v.* PACIFIC GENERAL CONTRACTORS, INC.

359 P. 2d 530

*Sam Kyle,* Albany, argued the cause for appellant. With him on the briefs were Mark V. Weatherford and Harrison M. Weatherford, Albany.

*W. C. Winslow* and *Norman K. Winslow,* Salem, argued the cause and filed briefs for the respondents.

Before McALLISTER, Chief Justice, WARNER, PERRY, SLOAN, O'CONNELL, GOODWIN and HOWELL, Justices.

HOWELL, J. (Pro Tempore)

Plaintiff appeals from an adverse decree in a suit to set aside a former judgment and for an accounting.

The parties, including the two corporations, have been twice before this court in *Pac. Gen. Contrs. v. Slate Const. Co.,* 196 Or 608, 251 P2d 454 and *Glaser et al v. Slate Const. Co.,* 196 Or 625, 251 P2d 441. The former will hereinafter be called the first case and the latter the second case. We shall refer to the defendant Pacific General Contractors as Pacific and the plaintiff, Slate Construction Company, as Slate Company to avoid confusion with M. C. Slate.

The Slate Company had been engaged in highway construction for many years. M. C. Slate was President and George Fritz and Webber Doughton were members of the Board of Directors. In May 1948, Slate, Fritz, Doughton and F. T. Glaser, William Glaser, D. E. Turnidge and P. L. Turnidge organized the Pacific General Contractors, Inc. to engage in highway construction. The men listed were elected to the Board of Directors and Slate was elected President, Fritz Vice President and Doughton Secretary-Treasurer. The other facts necessary to an understanding of the issues will be stated in connection with the questions discussed.

Slate Company asserts now, as before, that it was engaged in a joint adventure with Pacific. It charges that Pacific, together with the individual defendants herein, conspired to defraud Slate Company and acquire its property and asks the judgment obtained by Pacific in the first case be set aside for fraud.

The complaint alleges that a joint adventure was agreed upon at a special meeting of the two corporations held on May 25, 1948. This joint adventure, according to Slate Company, was to involve highway construction on the Roseburg, or North Umpqua, job. Apparently anticipating the defense of res judicata, the complaint declares the defense of joint adventure was pleaded and relied upon in the first case as a defense to Pacific's action for money had and received but that the trial court and this court did not pass upon the question.

The defendants' answer pleaded the judgment in the first case as an estoppel or res judicata to the allegations of joint adventure.

The trial court found that the defense of res judicata did not apply because of Slate Company's theory

of fraudulent conspiracy but held that the evidence failed to establish either a joint adventure between the two corporations or a fraudulent conspiracy upon the part of all the defendants and denied Slate Company's request for an accounting.

Two questions are presented upon this appeal:

(1) Does the defense of res judicata bar Slate Company's assertion that the two corporations were acting as joint adventurers on the Roseburg job; and,

(2) Was there a fraudulent conspiracy by the defendants to ruin Slate Company and secure its assets.

The first case was an action for money had and received brought by Pacific against Slate Company. The latter's answer alleging an equitable defense to the law action together with the entire file in that case, was introduced in evidence in the instant case. The answer alleged a joint adventure was formed by the parties and stated:

"Plaintiff, and particularly the individuals which formed the plaintiff corporation hereinabove mentioned, have become dissatisfied with said *joint venture* and seek to secure for themselves individually a return to them of the money invested in the purchase of the stock of the said plaintiff company, and have instituted and prosecuted this action at law set forth in the complaint, in violation of said *joint enterprise* and said contract and agreement between the two said corporations, and have caused writs of attachment to issue wrongfully out of the court upon the pretense that the defendant has borrowed the said sums of money mentioned in plaintiff's complaint from the plaintiff, when in truth and in fact said money was advanced by the plaintiff in the performance of said *joint enterprise.*" (Emphasis supplied.)

The decision of this court by Mr. Justice LUSK in the first case shows the theory of joint adventure was

determined against Slate Company by the trial court.
No decree was entered dismissing the equitable de-
fense but Slate Company then filed a general denial.
The trial court proceeded to hear the issues of law and
entered findings of fact, conclusions of law and judg-
ment for Pacific for $38,844.

The issue of joint adventure was urged by Slate
Company, again, on the appeal and this court stated:

> "The difficulty with defendants' position is,
> that while there is evidence to sustain a finding
> that the money in question—or most of it—went
> into a joint adventure, there is also evidence to
> the contrary." *Pac. Gen. Contrs. v. Slate Const.
> Co.,* supra at 620.

As there was substantial evidence to support the
trial court's conclusion that the two corporations were
not engaged in a joint adventure, the judgment was
affirmed. Contrary to the allegations in the instant
complaint, this issue was before both the trial court
and this court.

In *Winters v. Bisaillon,* 153 Or 509, 513, 57 P2d
1095, the following quotation from *Ruckman v. Union
Railway Co.,* 45 Or 578, 78 P 748, 69 LRA 480, was
approved:

> " 'It is settled law in this state, as elsewhere,
> that a judgment or decree rendered upon the merits
> is a final and conclusive determination of the rights
> of the parties, and a bar to a subsequent proceeding
> between them upon the same claim or cause of suit,
> not only as to the matter actually determined, but
> as to every other matter which the parties might
> have litigated and had decided as incident to or
> essentially connected therewith, either as a matter
> of claim or defense (Neil v. Tolman, 12 Or. 289,
> 7 Pac. 103; Morrill v. Morrill, 20 Or 96, 25 Pac.
> 362, 11 L.R.A. 155, 23 Am St. Rep. 95; Belle v.

Brown, 37 Or. 588, 61 Pac. 1024; White v. Ladd, 41 Or. 324, 68 Pac. 739, 93 Am. St. Rep. 732), but that when the action is upon a different claim or demand the former judgment can only operate as a bar or an estoppel as against matters actually litigated or questions directly in issue in the former action: Barrett v. Failing, 8 Or. 152; Applegate v. Dowell, 15 Or. 513 (16 Pac. 651); La Follett v. Mitchell, 42 Or. 465 (69 Pac. 916, 95 Am. St. Rep. 780); Caseday v. Lindstrom, 44 Or. 309 (75 Pac. 222); Gentry v. Pacific Livestock Co., 45 Or. 233 (77 Pac. 115). This distinction should always be kept in mind in considering the effect of a former judgment or decree. If the second action or defense is upon the same claim or demand, the former judgment is a bar not only as to matters actually determined, but such as could have been litigated; but, if it is upon another claim or demand, the former judgment is not a bar, *except as to questions actually determined or directly in issue.'*" (Emphasis supplied.)

See also *Nusom et ux v. Fromm et ux,* 217 Or 36, 340 P2d 186; *Kelley et ux v. Mallory et ux,* 202 Or 690, 277 P2d 767; and *Wagner v. Savage, Adm'r,* 195 Or 128, 147, 244 P2d 161.

■ While Slate Company's theory of a joint adventure with Pacific pervades the instant case including the charge of conspiracy to defraud and we feel that Slate Company's claims are the same in both suits, it is not important to the decision herein whether Slate Company's contentions are upon the same or a different "claim or demand." The former judgment is a bar at least as to the question of joint adventure and Slate Company cannot urge it again as an issue in this case.

The individual defendants herein were not parties to the first case and, therefore, the judgment in that case is not res judicata on joint adventure as to them. We do not understand, however, Slate Company to

contend a joint adventure existed between it and the individual defendants in this case as the complaint, briefs and oral argument all refer to the relationship being between the two corporations. For example, Slate Company's brief states, "This is a suit alleging that a joint venture was entered into by and between the Slate Construction Company, plaintiff, and the Pacific General Contractors," and the prayer asks "it be adjudged and decreed that the plaintiff and the defendant *corporation* entered into a joint venture for the performance of the Roseburg contract * * *." (Emphasis supplied.)

In any event, there is no evidence that the defendant individuals engaged in a joint adventure with Slate Company.

■ The decree of the trial court recited that it was based upon a failure of Slate Company to prove a joint adventure and conspiracy and not upon the defense of res judicata. Slate Company now argues that we cannot consider the question of res judicata because the defendants did not appeal from that recitation in the decree. The decree had dismissed the complaint. Defendants did not have to appeal as the decree was completely in their favor. While the reasoning of the trial court in dismissing the suit may have been partly erroneous, its conclusion was correct. *Walker v. Mackey et al*, 197 Or 197, 251 P2d 118, 253 P2d 280.

Slate Company asks to have the judgment obtained against them in the first case set aside for fraud. It charges that the allegations of money had and received were made falsely as part of the general conspiracy and claims that any money received by it was in connection with the joint adventure.

■ In order to set aside a judgment for fraud it must appear the fraud was practiced in the very act of

obtaining the judgment, and such fraud must be extrinsic or collateral as distinguished from intrinsic. *Mattoon v. Cole,* 172 Or 664, 671, 143 P2d 679; *Lothstein v. Fitzpatrick,* 171 Or 648, 138 P2d 919; *O.-W. R. & N. Co. v. Reid,* 155 Or 602, 610, 65 P2d 664; 30A Am Jur 724, Judgments § 783; 3 Freeman on Judgments (5th ed) 2567, § 1233; 88 ALR 1201.

■ Fraud is regarded as intrinsic where the fraudulent acts pertain to an issue involved in the original action. *Walker v. Sutherland,* 136 Or 355, 299 P 335; *Dixon v. Simpson et al,* 130 Or 211, 279 P 939; 30A Am Jur 725, Judgments § 784.

■ The question of whether Slate Company had and received money belonging to Pacific or if the funds were being used pursuant to a joint adventure was the very issue involved in the first case. If the allegations were false, the fraud would be intrinsic and cannot be urged in this case as a ground for vacating the prior judgment. *Lothstein v. Fitzpatrick,* supra.

> "A court of equity cannot inquire into the question of who told the truth in the law action sought to be set aside." *Dixon v. Simpson et al,* supra at 219.

In addition to charging the judgment in the first case was obtained by fraud because the allegations of money had and received were false, Slate Company urges many other incidents as evidence of the conspiracy to defraud. It would be impracticable to set them forth in detail as the record in this case is voluminous, consisting of over 6,000 pages and some 3,000 exhibits. The trial consumed six months and the decree was entered 4½ years later.

In substance, Slate Company states that the conspiracy began when Eldon Turnidge was persuaded and coerced by his father, D. E. Turnidge, one of the

defendants, to delay the clearing on the Roseburg contract.

In May 1948, Slate Company was awarded the contract with the Bureau of Public Roads for the Roseburg job. Eldon Turnidge was given a subcontract by Slate Company to do the clearing and grubbing along the right of way. He did not finish the job when anticipated and Slate Company cancelled the contract and completed the clearing. The delay caused a more expensive operation for Slate Company during the early spring under adverse conditions. There was evidence Eldon Turnidge did not hire sufficient personnel and did not remain on the job personally. There was also evidence he could not keep personnel because of lack of promised housing by Slate Company. D. E. Turnidge offered to take over the clearing job but desired to retain all the profit. This offer was refused. We fail to find any evidence that D. E. Turnidge persuaded or coerced his son to delay the contract and hinder Slate Company.

After Slate Company took over the Eldon Turnidge contract, it claims the defendants refused to make available the two DW-10 tractor carryalls for use on the Roseburg job and recalled other pieces of equipment owned by Pacific, thereby making them unavailable for use by Slate Company. This occurred on November 7, 1948, according to M. C. Slate. At this time relations between M. C. Slate and the defendants were strained. The defendants had become dissatisfied with the Slate management and believed he had misrepresented his financial condition when the parties organized Pacific. It was the position of the defendants that if Pacific owned the equipment, Slate Company should not be wearing it out and not paying any rent. Considering the general dissatisfaction between the par-

ties, this attitude was not unusual. In addition, some of the equipment was being used on a project of Slate Company at Estacada which admittedly was not involved in the alleged joint adventure.

Slate Company states that the "next move" in the conspiracy was accomplished on December 27, 1948, when the defendant Percy Turnidge stole the minutes of the May 25th meeting of Pacific. These minutes, according to Slate Company, showed conclusively that the two corporations were to engage in the Roseburg job as a joint adventure. The parties agree that Doughton, the Secretary-Treasurer of Pacific, and Percy Turnidge went to Pacific's office in the home of M. C. Slate to acquire some of the corporate records, but disagree on the date of this occurrence. Turnidge remained in the car and Doughton went into the house, had lunch, secured the records and returned to the car. Doughton is uncertain whether he delivered only the minutes of the May 25th meeting to Percy Turnidge or if he took all the minutes and he and Turnidge delivered them to their accountant for use in an audit. Percy Turnidge testified Pacific passed a resolution calling for an audit and that he and Doughton went to Slate's house where Doughton picked up the minutes. He remained in the car until Doughton returned and then drove to the accountant's office where Doughton delivered everything to the accountants.

It is conceded that Doughton, not Percy Turnidge, secured the minutes from Pacific's office. As Doughton, himself, is uncertain whether he delivered them to Turnidge or to the accountant's office, it can hardly be said the proof sustains the charge that Turnidge stole them.

A meeting of the Board of Directors of Pacific was held on October 30, 1948. Slate Company contends that

a motion was passed to continue the Roseburg job as a joint adventure but this was denied by the other defendants. The minutes showing a continuation of the joint adventure were not produced. M. C. Slate accounts for the missing minutes by saying he believed D. E. Turnidge cut them up at a later meeting on December 31, 1948. D. E. Turnidge testified he was cutting some paper with a pair of scissors but that the paper had nothing except some figures on it.

The property attached as a result of the judgment in the first case was sold at various execution sales. Slate Company charges that the property was sold for a fraction of its value, all as part of the conspiracy. M. C. Slate stated that he attended all the sales except one. Apparently he protested vigorously, stating the sale was illegal and fraudulent and Slate Company did not own some of the equipment being sold. When asked if he expected the people present to bid under those circumstances, Slate admitted he did not.

Cases cited by Slate Company involving liability for maliciously procuring a breach of contract are not in point.

■ Cases are also cited, including *Bosworth v. Allen,* 168 NY 157, 61 NE 163, supporting the general rule that officers and directors of a corporation stand in a fiduciary relation to the corporation and cannot seek their own profit at the expense of the corporation. Slate Company cannot argue that a fiduciary relation existed between it and Pacific as joint adventurers because of the judgment in the first case. Neither was there a joint adventure between the individual defendants and Slate Company for the reasons hereinbefore mentioned and as stated by Mr. Justice LUSK in the second case. (*Glaser et al v. Slate Const. Co.,* supra at 649.) Moreover, the defendants did not "operate and

conspire" against Slate Company as argued in the brief.

The record also shows that the defendants, or part of them, as early as the summer of 1948, became dissatisfied with M. C. Slate for various reasons including his using some of Pacific's money to pay bills incurred on the Estacada job by Slate Company. Concern about the solvency of Slate Company was expressed at a meeting on September 1, 1948, when M. C. Slate was absent. Webber Doughton testified that he took the two Glasers and the two Turnidges on an inspection trip to see what Slate Company owned. On the way the defendants expressed objections about M. C. Slate checking money out of Pacific "at will." Doughton told them Slate Company needed "financial advisors to strengthen it" and it was difficult to ascertain the true status of Slate Company's finances. The defendants wanted security for the money previously advanced and even expressed a willingness to advance more money to help out if they could get security.

During the fall of 1948 the defendants continued to express their desire for security and, according to Doughton, D. E. Turnidge offered to take his investment back without interest if he could be paid in sixty or ninety days.

Later the defendants requested a first or second mortgage or a bill of sale on the Slate Company equipment as security and this was refused by M. C. Slate. Many efforts to compromise were also made.

In January, 1949, Percy Turnidge replaced M. C. Slate as President of Pacific. In March 1949, the defendants decided that the only way to get their money out was to sue Slate Company and the complaint in the first case was filed April 27, 1949.

The record shows a picture of missing minutes, minutes transcribed from recollection with various editions introduced, disagreements concerning the events that transpired and which officers were present at the meetings, demands for more money by M. C. Slate with counter demands for security by the defendants, recriminations, threats to sue and the usual bitterness preceding litigation.

■ We have carefully considered the entire transcript and the evidence utterly fails to show a fraudulent conspiracy by the defendants. We appreciate that a conspiracy may be shown by circumstantial evidence as urged by Slate Company but the record falls far short of the mark.

The original judgment for $38,844 and the execution sales to collect it may have been disastrous to Slate Company but the judgment was valid.

■ The fact that a creditor takes steps through the medium of the courts to compel his debtor to pay an obligation, although it may embarrass the latter, destroy his credit and result in a sacrifice of his property, is not, in itself, fraud. *Venner v. Denver U. W. Co.*, 40 Col 212, 90 P 623, 631.

Instead of the defendants engaging in a fraudulent conspiracy, we are more inclined to believe the true situation was as expressed in Slate Company's brief on appeal in the first case:

"The thing that obviously happened was that the new people, Turnidges and Glasers, who had put up their money in a business that they did not understand (T. 7), started to become skeptical and to change their minds about wanting to go into the business. *That is not an unnatural reaction.*" (Emphasis supplied.)

The decree of the trial court dismissing the complaint is affirmed.